538 So.2d 635 (1988)
In the Matter of BASF CORPORATION, CHEMICAL DIVISION.
No. 87 CA 0625.
Court of Appeal of Louisiana, First Circuit.
December 20, 1988.
Rehearing Denied February 22, 1989.
Writ Denied April 21, 1989.
*636 William A. Percy III, Daria Burgess, New Orleans, for appellant Sierra Club and the Ascension Parish Residents Against Toxic Pollution.
Roland T. Huson, III, General Counsel, Dept. of Environmental Quality, William D'Armond, Maureen Harbourt, Baton Rouge, for appellee State of La.
Before WATKINS, CRAIN and ALFORD, JJ.
WATKINS, Judge.
This appeal challenges the Louisiana Department of Environmental Quality's (DEQ's) November 18, 1986 settlement with BASF Corporation, Chemical Division, regarding five separate violations at the BASF facility in Geismar, Louisiana of the Louisiana Environmental Quality Act (Act) and the Louisiana Air Quality Regulations.

FACTS
The DEQ began investigating BASF in April of 1986, after BASF reported a release of 50 to 75 pounds of phosgene at the BASF plant on April 2, 1986. On June 14, 1986 the BASF plant experienced a second leak involving the chemical toluene. Although the leak was initially detected on June 14, BASF failed to report it or take corrective steps until June 16, when the plant was shut down.[1] It was estimated that approximately 16,000 pounds of toluene were released. The DEQ investigation also discovered that the emissions from BASF's Toluene Di Isocaynate Phosgene Destruct Tower and the Basagran incinerator exceeded allowable permitted emissions.[2] *637 Additional violations involved BASF's failure to submit written notification to DEQ for asbestos removal on three specific occasions as well as for BASF's annual or non-scheduled asbestos operations for 1983, 1984 and
During July and August of 1986 the DEQ held a series of meetings with representatives of BASF regarding the above described violations. BASF agreed to waive a hearing and accept a civil penalty of $66,700 in settlement of the alleged violations. The DEQ agreed to the settlement and issued a penalty assessment to that effect on November 18, 1986. Prior to the penalty assessment, the DEQ issued a Compliance Order to BASF on October 10, 1986, requiring the following:
1. Revisions to the TDI Phosgene Destruct Tower in order to reduce the toluene emissions by a minimum of 90% across the control system.
2. Installation of additional ambient air phosgene monitors and associated equipment in areas where phosgene is present.
3. Development and implementation in the TDI plant of a training program on the proper use of flexiduct vapor recovery system; installation of ammonia utility line; installation of knock-out pot of sufficient size in order to enable corrective action to be taken in a timely manner.
4. Review with shift supervision and plant management the circumstances of the June 14, 15 and 16 toluene leak to insure immediate corrective action will be taken in the future.
5. Review new tube bundle design and establish increased inspection schedule in order to initiate corrective action before tube failure occurs.
6. Review emission control plans for the Basagran incinerator; design and install control equipment and achieve compliance with emission limits for the incinerator as established by permit by or before January 1, 1988.
Appellants, Sierra Club and The Ascension Parish Residents Against Toxic Pollution, appealed the DEQ's settlement with BASF in accordance with LSA-R.S. 30:1072 C[3] and Uniform RulesCourts of Appeal, Rule 2. Appellants assert the following errors.
1. Patricia Norton, as secretary of the Department of Environmental Quality, assessed the penalty against BASF without the concurrence of the Attorney General as required in LSA-R.S. 30:1073 H.
2. None of the "hearings" on July 3, 1986, August 4, 1986, and August 20, 1986, upon which penalty assessment was based, between the Department and BASF Corporation Chemical Division, was treated as an "adjudicative hearing", in violation of the Department's Rules of Procedure Number 3.6.
3. At all of these "hearings" the public was denied entry and admission, in violation of the Administrative Procedures Act, LSA-R.S. 49:950, et seq.
4. At none of these "hearings" was evidence properly taken or recorded, including the failure to make transcripts, in violation of both LSA-R.S. 49:955 and the Department's Rules of Procedure Numbers 5.5 and 9.0.
5. None of the "hearings" was publicly noticed and reported, in violation of the Department's Rules of Procedure Numbers 2.11 and 9.1.
6. None of the "hearings" was noticed on the Department's Notice Mailing List, in violation of the Department's Rules of Procedure Number 2.10.
7. Public testimony or comment was not allowed at any of these "hearings", in violation of the Department's Rules of Procedure Numbers 5.1(C) and 9.0.
8. The Department did not afford any person an opportunity to intervene in the *638 Complaint, in violation of the Department's Rules of Procedure 5.1(B).
9. Patricia Norton erred in determining the amount of the civil penalty by failing to consider properly the monetary benefits realized by the violator through noncompliance with the state's environmental laws and regulations, as specified in LSA-R.S. 30:1073E(3)(a)(v).
10. Patricia Norton erred by assessing a penalty disproportionate to the seriousness of the offense and failed to restore to the state damages inflicted by the violator.
11. The penalty assessment ordered by the secretary on November 18, 1986 is arbitrary, capricious, characterized by abuse of discretion, and contrary to law.
The Louisiana Environmental Quality Act, LSA-R.S. 30:1051, et seq., was enacted for the purpose of maintaining a healthful and safe environment in Louisiana which was declared to be a matter of critical state concern. In furtherance of these goals, the DEQ was created as "the primary agency in the state concerned with environmental protection and regulation."[4] The DEQ was vested with jurisdiction over matters affecting the regulation of the environment within the state, including but not limited to the regulation of air quality, noise pollution, solid waste disposal, radiation, hazardous waste management and the protection and preservation of the state's scenic rivers and streams. LSA-R.S. 30:1061A(1). The department is headed by the secretary, who is appointed by the governor and who is vested with all prior powers and duties heretofore granted to the Environmental Control Commission. LSA-R.S. 30:1061B and LSA-R.S. 30:1062. The DEQ is sub-divided into three separate offices,[5] each under the immediate supervision and direction of an assistant secretary also appointed by the governor. Among the secretary's powers and duties set forth in LSA-R.S. 30:1061D, are the following:
(1) To adopt, amend, or repeal all rules, regulations, and standards for the protection of the environment. LSA-R.S. 30:1061D(1).
(2) To grant or deny permits, licenses, registrations, variances, or compliance schedules. LSA-R.S. 30:1061D(2); to delegate this power to assistant secretaries. LSA-R.S. 30:1061D(3).
(3) To hold meetings or hearings on his own motion or upon complaint for purpose of factfinding, receiving public comments, conducting inquiries and investigations, and in connection therewith, to issue subpoenas requiring the attendance of witnesses and the production of documents. LSA-R.S. 30:1061D(5).
(4) To issue orders or determinations as necessary to effectuate the purposes of the Environmental Quality Act, including cease and desist orders. LSA-R.S. 30:1061D(6).
(5) To inspect and investigate facilities. LSA-R.S. 30:1061D(13).
(6) To assign certain duties to administrative law judges. LSA-R.S. 30:1061D(17); and
(7) To exercise all incidental powers necessary or proper to carry out the purposes of the Act. LSA-R.S. 30:1061D(14).
*639 The appropriate procedures required to carry out the secretary's powers and duties are set forth with specificity in subsequent sections of the Act. In connection with the instant case, the relevant section is LSA-R. S. 30:1073, which enumerates the various methods of enforcement available to the secretary for violations of the chapter or any rule, regulation, or order adopted thereunder. The general enforcement provision of LSA-R.S. 30:1073A provides that "any civil action necessary to carry out the provisions of this Chapter shall be brought by the secretary or upon the direction of the commission.[6] In such suits, the secretary or commission shall be represented by the attorney general." The specific enforcement provisions permit the secretary to:
(1) Bring a civil action, in a district court, to recover any damages or penalties resulting from a violation. The attorney general shall represent the department in such suits. LSA-R.S. 30:1073B.
(2) Issue an emergency cease and desist order should it be determined that a violation of the Chapter which endangers or damages the public health or environment is occurring or is about to occur. Such order remaining in effect for no longer than fifteen days or until a hearing is held whichever occurs first. LSA-R.S. 30:1073C(1).
(3) To issue a compliance order, should it be determined that a violation of any requirement of this Chapter has occurred or is about to occur. The compliance order must specify the nature of the violation, a time limit for compliance and in the event of noncompliance a civil penalty may be assessed. LSA-R. S. 30:1073C(2), (3), LSA-R.S. 30:1073D.
(4) Notify the district attorney of any willful or knowing violations of the Chapter, regulations or of the permit or license terms and conditions in pursuance thereof, and cooperate fully should the district attorney decide to prosecute. LSA-R.S. 30:1073F.
(5) Assess civil penalties for violations of the Chapter. LSA-R.S. 30:1073E.
(6) Settle or resolve, with the attorney general's concurrence, any suits, disputes, or claims for any penalty under any provisions of this Chapter or the regulations or permit or license terms and conditions applicable thereto. LSA-R. S. 30:1073H.
Under the facts of the present suit the DEQ chose to settle the claim against BASF and to assess a civil penalty under LSA-R.S. 30:1073E., which provides as follows:
(1) Any person found to be in violation of any requirement of this Chapter may be liable for a civil penalty to be assessed by the commission, the secretary, the assistant secretary, or the court of not more than one million dollars or the cost of any cleanup made necessary by such violation and a penalty of not more than twenty-five thousand dollars for each day of violation and may be subject to the revocation of [or] suspension of any permit, license, or variance which has been issued to said person. Any person found to be in violation of this Chapter shall be liable for legal interest from the date of the assessment of a civil penalty until paid.
(2) Any person to whom a compliance order or a cease and desist order is issued pursuant to R.S. 30:1073(C) who fails to take corrective action within the time specified in said order shall be liable for a civil penalty to be assessed by the commission, the secretary, the assistant secretary, or the court of not more than fifty thousand dollars for each day of continued violation or noncompliance.
(3)(a) In determining whether or not a civil penalty is to be assessed and in determining the amount of the penalty or the amount agreed upon in compromise, the following factors shall be considered:
(i) The history of previous violations or repeated noncompliance.

*640 (ii) The nature and gravity of the violation.
(iii) The gross revenues generated by the respondent.
(iv) The degree of culpability, recalcitrance, defiance, or indifference to regulations or orders.
(v) The monetary benefits realized through noncompliance.
(vi) The degree of risk to human health or property caused by the violation.
(vii) Whether the noncompliance or violation and the surrounding circumstances were immediately reported to the department and whether the violation or noncompliance was concealed or there was an attempt to conceal by the person charged.
(viii) Whether the person charged has failed to mitigate or to make a reasonable attempt to mitigate the danmages caused by his noncompliance or violation.
(ix) The costs of bringing and prosecuting an enforcement action, including staff time, equipment use, hearing records, expert assistance, and such other items as the commission finds to be a cost of the action.
(b) The secretary may supplement such criteria by rule. In the event that the order with which the person failed to comply was an emergency cease and desist order, no penalty shall be assessed if it appears upon later hearing that said order was issued without reasonable cause.
(4) No penalty shall be assessed without the person charged being given notice and an opportunity for a hearing on such charge. The person charged may waive a hearing on the issue of whether or not a violation has occurred, his culpability for such violation and any other ultimate issue. When a hearing on the violation is waived, a decision may be rendered upon the uncontested facts.
(5) After submission for a penalty determination at a hearing, the commission, secretary, or assistant secretary shall provide an opportunity for relevant and material public comment relative to any penalty which may be imposed. (Emphasis added)
Further rules governing the DEQ are found in the DEQ's Rules of Procedure, which the DEQ Promulgated pursuant to legislative mandate. The Rules pertaining to the issues presented in this case provide in pertinent part as follows:[7]
GENERAL PROVISIONS
2.0-2.13
. . . . .
2.5. SPECIAL MEETINGS. Special meetings of the Environmental Control Commission may be called at any time by the Chairman of the Commission. In addition, any interested person may petition the Commission to call and hold a special meeting in accordance with the provisions of Section 2.7 of these Rules of Procedure.
2.6. REQUESTS FOR COMMISSION ACTION. Any interested person may petition the Commission to have a matter placed on the agenda of a scheduled meeting or to have the Commission hold a public hearing on a particular matter.
2.7. PETITIONS FOR SPECIAL MEETINGS OR ACTION. A petition for a special meeting of the Commission under Section 2.5., and any request for Commission action under Section 2.6. shall be made by filing, in writing with the Assistant Secretary, a plain and concise statement of the purpose of the request and the action requested of the Commission. The petition shall be accompanied by supporting affidavits or documentation. The Assistant Secretary shall send copies of the petition and attchments to all members of the Commission and its legal counsel within seven days of receipt.

*641 2.8. ACTION ON PETITION. After reviewing the petition and any other factors it deems necessary, the Commission members shall decide at their next scheduled meeting after receipt of the request whether to call a public hearing and shall direct the Assistant Secretary to provide written notification of their decision and the reasons therefor to the petitioner within twenty (20) days of their decision on the petition.
. . . . .
INVESTIGATIONS AND ENFORCEMENT
3.0.3.6.
. . . . .
3.2 DEVELOPMENT OF FACTS. The Assistant Secretary has the power to develop facts by either staff investigatory procedures or through formal investigatory proceedings. In connection with the investigation of a possible violation of the rules and regulations, the Assistant Secretary may hold non-adjudicatory, fact-finding public hearings in accordance with these rules, and may conduct such inspections of facilities and records as may be necessary. (Emphasis added)
. . . . .
3.5. DETERMINATION OF VIOLATION. When the Assistant Secretary determines that a violation of the Act, the existing rules and regulations of the predecessors of the Commission, or of any of the rules and regulations of the Environmental Control Commission under the Environmental Affairs Act is occurring, the Assistant Secretary or the Commission shall commence appropriate enforcement proceedings under the Environmental Affairs Act. (Emphasis added)
3.6. ENFORCEMENT ACTION. All enforcement actions taken by the Commission or the Assistant Secretary shall be conducted in accordance with the provisions of LRS 30:1073. All hearings held pursuant to LRS 30:1073E shall be adjudicative .... (Emphasis original)
ADJUDICATORY HEARINGS
5.0.5.8.
5.0. APPLICABILITY. Adjudicatory or adjudicative hearings, as contemplated by the Louisiana Administrative Act, LRS 49:91 et seq., shall be held for all administrative enforcement proceedings under LRS 30:1073, ... and in those instances where the Commission or the Assistant Secretary determines that equity and justice requires an adjudication. Any person possessing a real interest that might be adversely affected by action of the Commission or Assistant Secretary may petition the Commission or Assistant Secretary, in writing, to hold an adjudicative hearing. The Commission or Assistant Secretary shall accept or deny the petition, in writing, giving reasons for the decision, prior to taking the action for which a complaint has been made.
The holding of an adjudicative hearing shall not limit or prevent the holding of non-adjudicatory, fact-finding hearings on the same subject matter. (Emphasis added)
5.1. PARTIES AND WITNESSES.
A. In an adjudicatory hearing, the person under investigation and the agency trial staff of the Office of Environmental Affairs shall be parties entitled to cross-examine witnesses, object to evidentiary offers or testimony, or otherwise participate in an adjudicatory role.
B. The complainant, or any other person who has a substantial interest in the outcome of the adjudication, may be permitted to intervene as parties. Intervention shall be freely granted provided the proper petition for intervention is filed at least fifteen (15) days prior to the hearing and such intervention is not likely to create an undue broadening of the issue or otherwise unduly impede the resolution of the matter. (Emphasis added)
. . . . .
5.4. INFORMAL DISPOSITION. Unless precluded by law, informal disposition may be made at any time of any case of adjudication by stipulation, *642 agreed settlement or consent order. (Emphasis added)
. . . . .
DECISIONS AND ORDERS
7.0
7.0. Any final decision or order will be in writing or will be stated in the record. A final decision will include findings of fact and conclusion of law.... By written stipulation, the parties may waive, and in the event that there is no contest, the Secretary may eliminate compliance with this section. (Emphasis added)
FACT FINDING HEARINGS
9.0.9.3.
9.0. APPLICABILITY. Except as provided in Subsection 5.0 of these Rules of Procedure or unless otherwise required by law, all hearings not requiring adjudication shall be non-adjudicative, fact-finding hearings. The purpose of such hearings is to gather data, public comments and information, in an impartial manner, which may be used by the Assistant Secretary or Commission in the exercise of their duties under the Louisiana Environmental Affairs Act. Fact-finding hearings may be held prior to the docketing of an adjudicatory hearing on the same subject matter, provided that a full record is made of the hearing and delivered to the decision making or decisional body, without recommendations, prior to commencement of the adjudicative hearing.
. . . . .
9.2. CONDUCT. Any person may appear and present relevant oral or written comments at a fact-finding hearing....
. . . . .
ASSIGNMENTS OF ERROR NUMBERS 2 THROUGH 7
The primary issues raised in these assignments of error is the appellants' contention that the DEQ is required to hold an "adjudicatory" hearing whenever the DEQ determines that there has been a violation of the Environmental Quality Act. It is also the appellants' contention that the "meetings" which were held between the DEQ and BASF were in fact "hearings" and as such the DEQ violated numerous departmental rules. Among the alleged rule violations are the DEQ's failure to permit the public to participate in the hearings, failure to transcribe the hearings, failure to notice the hearings, and the failure to elicit public comments at the hearings.
The appellants argue that Rules 3.5 and 3.6 require the DEQ to hold an adjudicatory hearing every time the DEQ determines that there has been a violation of the Act. We do not find these rules to require a hearing in every case. Rule 3.5 provides that once a violation is determined, the DEQ shall commence appropriate enforcement proceedings under the Act.[8] As set forth above, LSA-R.S. 30:1073 provides numerous enforcement options, each with different procedural rules. In the instant case the DEQ elected to proceed under LSA-R.S. 30:1073 E, wherein a penalty may not be assessed without the person charged being given notice and an opportunity for a hearing on such charge. However, LSA-R.S. 30:1073 E(4) permits the person charged to waive a hearing on the issue of whether or not a violation has occurred, his culpability for such violation and any other ultimate issue. When a hearing is waived, a decision may be rendered upon the uncontested facts. The statute further provides in sub-section E(5) that "After submission for a penalty determination at a hearing, the ... secretary, or assistant secretary shall provide an opportunity for relevant and material public comment relative to any penalty which may be imposed." The appellants contend that sub-section E(5) requires the DEQ to have a hearing to determine a penalty notwithstanding *643 the fact that the person charged has waived a hearing on the violation charged. The appellants argue that the public has a "right to be heard" concerning violations of the Environmental Quality Act, and that the "right" may not be waived by the alleged violator. We do not agree.
The provisions set out in LSA-R.S. 30:1073 H and Rule 5.4 clearly permit the DEQ to settle or resolve any claim informally. To require an adjudicative hearing in all enforcement proceedings under LSA-R.S. 30:1073 E, where the person charged has waived their right to a hearing, would render LSA-R.S. 30:1073 H and Rule 5.4 meaningless.[9] These provisions clearly permit the secretary to resolve claims informally. This is not to say that the DEQ may not hold a fact-finding or an adjudicative hearing on its own motion or on the petition of an interested person when the secretary determines that the facts warrant a hearing. Rule 5.0.
The statutory scheme under which the DEQ functions does not grant the public an absolute right to be heard concerning violations of the Act.[10] However, the statute freely permits interested persons to petition the DEQ for public hearings which the DEQ, in its own discretion, may grant or deny. The appellants did not at any time petition the DEQ for a hearing in this matter and may not, on appeal, rely on the petition of other interested persons to claim an abuse of the DEQ's discretion for not holding a public hearing.
Appellants' contention that the meetings held between the DEQ and BASF were in fact "hearings" and therefore subject to the procedural rules for such, is also without merit. Meetings held between the DEQ and an alleged violator, in an attempt to settle or resolve a suit, dispute or claim under LSA-R.S. 30:1073 E, are not "hearings" requiring public notice and an opportunity for public comment as set forth in the departmental rules. As stated above, the DEQ has the authority to settle or resolve any claim informally. Informally, as defined by Webster's New World Dictionary, means "not according to prescribed or fixed customs, rules, ceremonies,...." We find that the private meetings held by DEQ were not "hearings," as defined by the Departmental Rules and as such the DEQ was not required to follow the procedural rules governing such "hearings."

ASSIGNMENT OF ERROR NUMBER 8
In this assignment of error the appellants contend that the DEQ did not afford any person an opportunity to intervene in the complaint against BASF in violation of Rule 5.1 B. As set forth above in Rule 5.1 B, any person who has a substantial interest in the outcome of the adjudication may be permitted to intervene as parties. The rule further provides that intervention shall be freely granted provided the proper petition for intervention is filed at least fifteen days prior to the hearing. Clearly the rule contemplates party intervention only when an adjudicative hearing is to be held. We further note that party status is primarily obtained to permit an interested person to "cross-examine witnesses, object to evidentiary offers or testimony, or otherwise participate in an adjudicatory role." Rule 5.1 A. Because no adjudication was held in the instant case, party intervention was unnecessary and procedurally improper.
The appropriate procedure for an interested person to become a party, when no *644 adjudicative hearing is scheduled, is to petition for an adjudicative hearing under Rule 5.0. If the hearing is granted the interested person may then petition for party status in the proceeding. The Rules of Procedure also provide that the DEQ on its own motion, or on the petition of an interested person, may hold a non-adjudicative fact-finding hearing in which any person may appear and present relevant oral or written comments.

ASSIGNMENT OF ERROR NO. 1
The appellants contend that the penalty assessment ordered by the DEQ is invalid because the attorney general did not approve the settlement as required by LSA-R.S. 30:1073 H. BASF asserts that the attorney general's approval is not required when the DEQ assesses a civil penalty without instituting a civil suit. BASF contends that LSA-R.S. 30:1073 H only requires the concurrence of the attorney general when the settlement is agreed upon after a civil suit has been instituted by the DEQ in the name of the state to recover any damages or penalties. BASF reasons that because the DEQ chose not to institute a civil action against BASF the attorney general's concurrence is not required in order for the DEQ to settle a claim for a penalty.
LSA-R.S. 30:1073 H, Settlement of suits, provides:
Except as otherwise provided herein, the commission or secretary, with the concurrence of the attorney general, may settle or resolve as deemed advantageous to the state any suits, disputes, or claims for any penalty under any provision of this Chapter or the regulations or permit or license terms and conditions applicable thereto. (Emphasis added)
Prior to its 1980 amendment LSA-R.S. 30:1073 H read as follows:
F. Settlement of suits
The commission, with the concurrence of the attorney general, may settle or resolve in its discretion, and as it may deem advantageous to the state, any suit undertaken for recovery of any penalty or for the purpose of compelling compliance with any provision of this Chapter or the regulations or permit license terms and conditions applicable thereto. (Acts 1979, Number 449). (Emphasis added)
When interpreting a law (ordinance), the court should give it the meaning the lawmaker intended. It is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the lawmaker inserted idle, meaningless or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant or useless. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject.
Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1st Cir.1984).
Applying the above precepts, we are compelled to conclude that the legislature intended to give a broader meaning to section H when it amended that section, adding the words "disputes or claims." Prior to the 1980 amendment the law clearly required the attorney general's concurrence only when the DEQ settled or resolved a pending "suit", which by the terms of LSA-R.S. 30:1072 the attorney general had charge of.[11] However, after the 1980 amendment the requirement of the attorney general's concurrence in settlements was clearly extended beyond those settlements reached only after a "suit" was filed.
We note with interest that the legislative expansion of the attorney general's authority to concur in settlements occurred at the same time that the legislature extended the DEQ's authority under LSA-R.S. 1073 E(1) allowing the secretary to assess penalties *645 for any violation of the act without having to institute a civil suit. LSA-R.S. 30:1073 E. Prior to the 1980 amendment of LSA-R.S. 30:1073 E(1) the DEQ was only permitted to assess penalties for violations of previously issued compliance and cease and desist orders.

ASSIGNMENTS OF ERROR NUMBERS 9, 10 AND 11
These assignments of error involve the DEQ's methods of determining a civil penalty and the adequacy of the penalty assessment against BASF. The appellants contend that in determining the penalty to be assessed against BASF the DEQ did not comply with the guidelines set forth in LSA-R.S. 30:1073D, specifically the requirement that the DEQ consider the violator's monetary benefits through noncompliance.
"The general principle governing judicial review of administrative decisions is that, if the evidence as reasonably interpreted supports the determination of an administrative agency, its orders are accorded great weight and will not be reversed or modified in the absence of a clear showing that the administrative action is arbitrary and capricious." Blackett v. Dept. of Environmental Quality, 506 So.2d 749, 752 (La.App. 1st Cir.1987). See also Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984).
There are five separate violations of the act for which BASF has been assessed a penalty. Each violation carries a maximum possible civil penalty of $25,000 for each day of the violation as well as possible revocation or suspension of any permit, license, or variance which was previously issued. LSA-R.S. 30:1073 E(1). The secretary or assistant secretary may also assess a civil penalty of not more than one million dollars or the cost of any cleanup made necessary by such violation. LSA-R.S. 30:1073 E(1).
A review of the record in the instant case reveals little if any explanation for the amount of the penalty assessed by the DEQ. The penalty assessment issued by the DEQ lists the five specific violations for which the penalty is being assessed, and then concludes by stating that: "Having considered the factors set forth in Section 1073 of the Act, and in light of all presently known facts and circumstances in this matter, a civil penalty in the amount of $66,700 would be appropriate, equitable, and justified." The only other documentation pertaining to the DEQ's reasons for assessing the $66,700 penalty are the hand written notes taken at the meetings held between the DEQ and BASF. We are unable to glean any intelligible reasons from the notes nor can we discern the DEQ's intent from the remainder of the record.
Although a reviewing court may uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned, such as when its findings, reasons and exercise of discretion are necessarily and clearly implied by the record, we will not supply a finding from the evidence or a reasoned basis for the DEQ's action that the DEQ has not found or given. Save Ourselves, supra, at 1160.
The private nature of the proceedings in this case have had the effect of providing us with an inadequate record to review. We are unable to determine from this record whether the DEQ properly exercised its discretion. The DEQ did not assign reasons for its decision, nor provide any factual findings other than a listing of the violations. We therefore remand the case for further proceedings consistent with the views expressed herein.
For the reasons set forth, we vacate the penalty assessment against BASF and remand the case to the DEQ. The DEQ is ordered to comply with the guidelines set forth in LSA-R.S. 30:1073 E, and to provide accompanying reasons for its penalty assessment. The DEQ is also ordered to provide persons with a real interest an opportunity to petition for a hearing in accordance with the applicable rules which, in the exercise of its discretion in accordance with law, it may grant or deny. The DEQ is further ordered to obtain the concurrence of the attorney general on the *646 penalty assessment. Costs of this appeal to await a final determination.
VACATED AND REMANDED.
NOTES
[1] Failure to immediately report a discharge in contravention of any provision of the Environmental Quality Act or the regulations or of any permit constitutes a violation of the Act. Each day of the failure to give notification constitutes a separate violation and shall be in addition to any other violations. LSA-R.S. 30:1073 J., LSA-R.S. 30:1089 G.
[2] The investigation revealed that the excessive emissions from BASF's Di Isocaynate Phogene Destruct Tower had been in violation of BASF's state emission permit for at least seven years.
[3] LSA-R.S. 30:1072 C reads, in pertinent part, as follows:

Any person aggrieved by a final decision or order of the secretary may appeal therefrom to the Court of Appeal, First Circuit....
[4] In 1983 the DEQ replaced the Office of Environmental Affairs, subsuming its authority.
[5] LSA-R.S. 30:1061 C(1) reads as follows:

C. (1) The department shall be divided into offices.
(a) The office of air quality and nuclear energy shall administer and enforce the Louisiana Air Control Law as provided in Part III of this Chapter, the Louisiana Nuclear Energy and Radiation Control Law as provided in Part V of this Chapter, and the Central Interstate Low-Level Radioactive Waste Compact as provided in Part V-A of this Chapter.
(b) The office of water resources shall administer and enforce the Louisiana Water Control Law as provided in Part IV of this Chapter.
(c) The office of solid and hazardous waste shall administer and enforce the Louisiana Solid Waste Management and Resource Recovery Law as provided in Part VI of this Chapter, the Louisiana Hazardous Waste Control Law as provided in Part VII of this Chapter, and the Louisiana Resource Recovery and Development Law as provided in Part VIII of this Chapter.
[6] LSA-R.S. 30:1062 provides that "[w]here the term `commission' is used in this Chapter, it shall mean the secretary of the Department of Environmental Quality."
[7] Under LSA-R.S. 30:1068 all rules and regulations in effect at the time of the enactment of the Chapter shall continue to be in effect unless amended or repealed. The Rules and Regulations cited are those adopted by the Environmental Control Commission, as they have not been amended or repealed by the DEQ.
[8] A similar provision is found in the Act at Section 30:1089 J, and reads as follows:

For an emission which the office of air quality and nuclear energy determines to have been preventable, the assistant secretary shall initiate appropriate enforcement proceedings under this Chapter.
[9] The appellants further argue that LSA-R.S. 30:1073 H and Rule 5.4 permitting the DEQ to settle or resolve a claim does not apply unless all parties agree to the settlement. It is their contention that over 100 residents of Ascension Parish attempted to intervene in and become party to the proceedings against BASF, and therefore the DEQ was unable to settle this claim without their approval. This argument is without merit for the reasons expressed in Assignment of Error Number 8.
[10] We note that the Act mandates a public hearing under LSA-R.S. 30:1136.1 for the purpose of fact finding, receiving public comments, or conducting inquiries and investigations in connection with the processing of applications for permits or licenses for commercial hazzardous waste treatment, storage, or disposal facilities which receive and treat, store, or dispose of waste for a fee or other consideration.
[11] LSA-R.S. 30:1073 G provides that "[t]the attorney general shall have charge of and shall prosecute all civil cases arising out of violation of any provision of this Chapter including the recovery of penalties."