LEAR, Judge.
This is an action to enjoin the construction of a disposal well in Calcasieu Parish. Plaintiff, Concerned Citizens of Calcasieu River and Old Town Bay, is a nonprofit organization that is comprised of a group of citizens-residents of Calcasieu Parish who have united to do battle on America’s latest legal frontier-the environment. Its organization numbers more than three hundred seventy-five members residing throughout the parish. Its purpose is to protect the wildlife and preserve the river and Old Town Bay for fishing, boating, water skiing and other recreational uses and to prevent the discharge of waste and pollutants into the air and subsurface in the area adjacent to the Calcasieu River and Old Town Bay.
Defendant, Lake Charles Refining Company, is a joint venture or unincorporated association of three Texas corporations, namely: (1) American Western Energy Company, Inc. or “AWECO, Inc.”, (2) C B K, Inc., and (3) Kennedy International Company, Inc. Defendant owns and operates a ten thousand barrel per day crude oil topping unit on the Calcasieu River, northeast of Lake Charles in the Parish of Calcasieu.
On March 19, 1979, defendant applied to the Louisiana Commissioner of Conservation, also a defendant herein, for authority to drill and operate a disposal well. The request was made by J. R. Theaker of Walk, Haydel & Associates, Inc., a firm of consulting engineers, representing Lake Charles Refining Company. In his letter, Theaker stated that the company intended to “ultimately dispose of 150,000 GPD [gal- *1332 Ions per day] of waste water having the following composition, through a perforated interval from 3120 feet to 3230 feet:
“Effluent Characteristics “Effluent Limitations Daily Average (Pounds/Day)
“BODS 42.6
“COD 218.7
“TTS 36.66
“Oil and Grease 13.47
“Phenols 0.303
“Ammonia 8.4
“Sulfides 0.228”
Upon receipt of the application for a salt water disposal well by the Lake Charles Office of Conservation, William C. Wilhite, District Manager of the Lake Charles office, forwarded the application to the Baton Rouge office with the following notation attached:
“My interpretation of this application is that it is a waste disposal well as defined by Order 29-N. I told Mr. Theaker that was my interpretation and he said that he had talked to someone in Baton Rouge who said this application might be processed as a salt water disposal well. I told Mr. Theaker I would forward this application to you and he could call you Monday (3/26/79) and get your interpretation on whether this would be a salt water disposal well or a waste disposal well.”
On April 4, 1979, Robert D. Bates, chief conservation geologist, wrote to Wilhite and stated the following:
“It is our opinion that this application cannot be approved as a salt water disposal well and we suggest that the applicant proceed under the rules and regulations established to regulate industrial waste disposal wells.”
Bates’ assessment included an additional letter from defendant’s consultants, Walk, Haydel & Associates, Inc., dated March 28, 1979. In that letter, Theaker said:
“The main source of this wastewater is from the facility’s desalter. Cooling tower and boiler blowdown will contribute to the stream. This wastewater stream will pass through an API separator where free oil will be separated from the water.
It will then discharge into a biological treatment system consisting of two aerated lagoons where it will be treated to remove 85-90 percent of the dissolved organics. The resulting concentration of effluent characteristics in the treated wastewater are tabulated below:
Concentration
“Effluent Characteristics (parts per million)
“Biochemical Oxygen Demand (BOD) 34
“Chemical Oxygen Demand (COD) 174
“Total Suspended Solids (TSS) 29
“Oil and Grease 11
“Phenols 0.24
“Ammonia 6.7
“Sulphide 0.18
“In summary, Lake Charles Refining Company is anticipating it will receive approval from EPA to discharge its treated effluent into the Calcasieu River. However, delays in the permitting process will result in this permit being issued after the scheduled start-up of the facility. Lake Charles Refining is therefore seeking approval to discharged (sic) its treated process wastewater into a disposal well.”
Bates’ letter of April 4, 1979, shows that he was still impressed that the application could not be approved. Nevertheless, the opposition of the commissioner was ostensibly withdrawn and the permit issued without complying with Statewide Order 29-N. No public notice of, nor opportunity to be heard on, the application of Lake Charles Refining Company was ever given. No permit to operate a waste disposal well has been obtained pursuant to Statewide Order 29-N.
At the close of plaintiff's case, the defendants moved for a directed verdict which was granted by the trial judge in a non-jury trial. Plaintiff then perfected this appeal.
It should be observed that the transcription of the proceedings below does not reflect the basis of the motion for directed *1333 verdict. Moreover, the trial court gave no written reasons for judgment, nor are any oral reasons transcribed. The briefs filed by the parties, however, suggest that the lower court’s ruling was predicated on the finding that plaintiff was not a party whose interests were “adversely affected” by the violation or threatened violation of “. . .a law of this state with respect to the conservation of oil or gas, or both, or a provision of this Chapter, or a rule, regulation, or order made thereunder . . . ” L.S.A.-R.S. 30:14.
As shown by the testimony and the answers to interrogatories, plaintiff organization draws from a membership living and working in all areas of Calcasieu Parish. The practice sought to be enjoined is an operation which may bear materially on the present and future welfare of those who reside within Calcasieu Parish. The legislature of our state has vested the Department of Natural Resources with the authority to issue permits for and to regulate disposal wells. The commissioner is directly charged with the responsibility to promulgate appropriate rules and regulations. R.S. 30:1(D) and 30:4(C)(16). Statewide Order 29-N was issued under this authority. See Rollins Environmental Services of Louisiana v. Iberville Parish Police Jury, 365 So.2d 497, 500 (La.App. 1st Cir. 1978, en banc panel), affirmed 371 So.2d 1127 (La.). In Rollins, 371 So.2d 1127, our Supreme Court discusses at length the state and federal legislation enacted within the past decade and the provisions for implementation. Compare Costle v. Pacific Legal Foundation, 445 U.S. 198, 100 S.Ct. 1095, 63 L.Ed.2d 329 (1980).
The common thread running through both the federal and state scheme of environmental regulation is the strong desire that the public have input in the decisions concerning elimination of pollution. Surely the residents of Calcasieu Parish and particularly those who, as here, are organized for that expressed purpose, are aggrieved by agency action within the meaning of the relevant statute. Environmental Defense Fund, Inc. v. Hardin, 428 F.2d 1093 (D.C.Cir.1970).
By its pleadings and its proof, plaintiff, Concerned Citizens of Calcasieu River and Old Town Bay, has in the opinion of this court proven sufficient “affected interest” to meet the test of defendant’s motion for a directed verdict, which, in fact, is really a motion to dismiss under C.C.P. article 1810(B). To hold otherwise would be to subvert one of the clear purposes and intent of virtually all federal and state environmental legislation enacted since 1972, i. e., to ensure public participation in the regulatory process as a safeguard against abuses in the administrative process.
We note, further, that upon remand, the trial court should require the Commissioner and/or Lake Charles Refining Company to present expert testimony establishing the chemical composition of the fluid(s) sought to be injected into the subsurface well. To do less would seriously undermine the judicial function in the scheme of environmental protection.
For the foregoing reasons, the judgment appealed is reversed, and the case is remanded to the trial court for further proceedings consistent with the views herein expressed.
All costs of this appeal are to be borne by the plaintiff-appellees, all other costs to await the final disposition of the case.
REVERSED AND REMANDED.