642 So.2d 1258 (1994)
In the Matter of AMERICAN WASTE AND POLLUTION CONTROL COMPANY.
No. 93-C-3163.
Supreme Court of Louisiana.
September 15, 1994.
Rehearing Denied December 9, 1994.
*1260 Gerald L. Walter, Jr., James C. Percy, Brent Barber Boxill, Schwab & Walter, for applicant.
Jackie M. Scott Marve, William V. Redmann, Bob Boese, P. Charles Calahan, Maureen N. Harbourt, Esteban Herrera, Jr., for respondent.
Richard P. Ieyoub, Atty. Gen., David C. Kimmel, John B. Sheppard, Jr., for amicus curiae State.
Daria L. Burgess, Richard C. Ellis, for amicus curiae La. Citizen Action, Gulf Coast Tenant Organization, La. Environment Action Network, Southern Christian Leadership Conference, Ass'n Community Organization Reform, St. John Citizen Environmental Justice, North Baton Rouge Environmental Ass'n, Concerned Citizen of Northeast La., Concerned Citizen of CENLA, Delta Greens, La. League of Women Voters, Orleans Audubon Society, Sierra Club-Delta Chapter, Calcasieu League of Environmental Act, Secure Environment of Everyone.
Emile C. Rolfs, III, William F. Ridlon, II, for amicus curiae City of Baton Rouge, East Baton Rouge Par.
William F. Ridlon, II, Hon. Michael E. Ponder, Larry D. Book, Counsel amicus curiae for East Baton Rouge Par.
Maureen N. Harbourt, Esteban Herrera, Jr., Robert N. Aguiluz, amicus curiae for La. Chemical Ass'n.
WATSON, Justice.[1]
The issue is whether an action taken by the Louisiana Department of Environmental Quality (DEQ) on a solid waste disposal permit application without an adjudicatory hearing is a "final decision or order" under LSA-R.S. 30:2024(C) which affords judicial review to persons aggrieved by the action.

FACTS
In the early 1980's, solid waste disposal posed a serious problem for the governmental entities of St. Martin, Iberia, and Lafayette Parishes. American Waste and Pollution Control Company (American Waste) proposed a site outside St. Martinville near Cade, Louisiana, for construction of a solid waste disposal facility (Cade I). On February 26, 1987, DEQ Secretary Martha Madden denied a construction permit based on the site's geologic conditions and the proposed facility's proximity to the Chicot Aquifer. DEQ's Environmental Regulatory Code (1992) defines aquifer as "a formation, group of formations, or part of a formation that contains sufficient saturated permeable materials to yield significant quantities of water to wells and springs." Title 33:VII.501. The Chicot Aquifer is a major source of drinking water for southwest Louisiana.
In November of 1987, American Waste submitted a site selection study for a second facility in the Cade area (Cade II), approximately 1.5 miles from the Cade I proposed site, on the east side of La. Hwy. 182, almost one mile north of the highway's intersection with Duchamp Road.
Under DEQ rules, an application is first reviewed by DEQ staff to determine whether the format, technical engineering, geochemical, and environmental aspects of the application are consistent with DEQ regulations. If deficiencies are noted, the applicant is allowed an opportunity to correct them. When the application is deemed complete, the law requires a public hearing, followed by a thirty-day delay for public comment. After the thirty day period, DEQ staff again reviews the matter to determine whether additional information should be considered. DEQ department heads then make recommendations and the completed application is sent to the DEQ Secretary for a decision.
A public hearing was held December 15, 1987. No transcript or recording of this hearing exists. Despite local opposition to the site selection, DEQ informed American Waste that its permit application was deemed acceptable for public review. American Waste submitted its permit application to DEQ in February of 1988.
*1261 By letter dated December 2, 1988, attorney Robert L. Boese wrote to DEQ on behalf of the Episcopal School of Acadiana "and other concerned citizens of St. Martin and Lafayette Parishes" requesting both a fact-finding hearing and an adjudicatory hearing based on issues of technical merit and legal sufficiency.
In March of 1989, DEQ wrote the Headmaster of the Episcopal School of Acadiana, stating a final decision had not been made and would not be made "until the appropriate time, which is after public hearings and any additional hearings that may follow, such as adjudicatory and court hearings."
A public hearing on American Waste's permit application was held April 3, 1989. Public interest was intense with approximately 1500 people in attendance and over 120 people commenting on the permit application.
On motion of American Waste, then-DEQ Secretary Paul Templet was recused July 5, 1990, from acting on American Waste's permit application. See Matter of American Waste and Pollution Control Company, 581 So.2d 738 (La.App. 1 Cir.1991). Retired Judge William V. Redmann was appointed Secretary pro tempore of DEQ to render a decision on American Waste's Cade II application.
On July 12, 1991, the president of War on Waste (WOW), a non-profit unincorporated association, wrote DEQ and requested an updated public hearing because American Waste's permit application was four years old. The environmental group pointed out that DEQ policy requirements had changed, that new solid waste regulations were about to be issued, that current DEQ staff had not studied this application and that citizens advisory committees had not had the opportunity to comment on the application. The letter included the following notation: "At one time, early in the process, a request was made for an adjudicatory hearing. Please determine and advise us on the status of that request." DEQ failed to respond to this request; no adjudicatory hearing was held.
On January 9, 1992, Judge Redmann, acting as DEQ Secretary pro tempore, granted American Waste a standard permit for the construction, installation, and operation of a solid waste facility at Cade II.
WOW, joined with the Acadiana Chapter of the National Audubon Society, a non-profit corporation (collectively referred to as WOW herein), filed an appeal with the First Circuit Court of Appeal. A copy of the appeal was filed with DEQ. The First Circuit considered the simultaneous filing and ordered that the appeal be transferred to DEQ for treatment as a motion and order for appeal. A DEQ hearing officer ordered that an appeal to the court of appeal be granted.
American Waste filed a motion to dismiss the appeal, arguing that the appellants were untimely, had incorrectly taken an appeal to the court of appeal rather than to DEQ and lacked standing under LSA-R.S. 30:2024(C) in that they were not "aggrieved parties." The motion to dismiss was denied; the appeal was deemed timely and in the proper forum. The appellate court found WOW had standing as an "aggrieved party" due to its claim that constitutionally protected rights of liberty and property would be violated by the facility.
On the merits, the court of appeal found DEQ erroneously issued the permit without proper evaluation of alternative sites, without a balancing of benefits versus the risk to the environment, without listing basic findings or ultimate findings, without articulating a rational connection between factual findings and the resulting order, and by misstating the test to be used. The court of appeal vacated the Secretary pro tempore's order and remanded to DEQ for further proceedings. 633 So.2d 188 (La.App. 1 Cir.1993). A writ was granted to review the matter. 93-3163 (La. 3/11/94), 634 So.2d 837.[2]

*1262 LAW AND ANALYSIS
Article IX, Section 1 of the Louisiana Constitution provides:
The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy.
This article continues the Public Trust Doctrine in environmental matters first recognized in the 1921 Constitution's Article VI, § 1 and "imposes a duty of environmental protection on all state agencies and officials, establishes a standard of environmental protection, and mandates the legislature to enact laws to implement fully this policy." Save Ourselves v. La. Environ. Cont. Com'n, 452 So.2d 1152, 1156 (La.1984); McCowan, Charles S. The Evolution of Environmental Law in Louisiana, 52 La.L.Rev. 907 (1992). This constitutional standard has been interpreted as a "rule of reasonableness" which "requires a balancing process in which environmental costs and benefits must be given full and careful consideration along with economic, social and other factors." Save Ourselves, 452 So.2d at 1157.
The Constitution also ensures basic due process protections. See La. Const. art. I, § 2 (no deprivation of life, liberty or property without due process), La. Const. art. I, § 19 (no forfeiture of rights or property without the right of judicial review of the record), and La. Const. art. I, § 22 (right of access to courts).
Sweeping legislation implements the constitutional environmental mandate. LSA-R.S. 30:2002 provides "the maintenance of a healthful and safe environment for the people of Louisiana is a matter of critical state concern." In order to protect the state's resources, the Legislature created the DEQ and designated it the primary state agency concerned with environmental protection and regulation. DEQ has specific jurisdiction over solid waste disposal regulation. LSA-R.S. 30:2011(A)(1).
The Legislature has reposed the power to issue environmental permits in DEQ and has authorized the agency to exercise quasi-judicial authority. Matter of American Waste & Poll. Control, 588 So.2d 367 (La.1991). The Secretary of DEQ is empowered, inter alia, to grant or deny permits and "to hold meetings or hearings ... for purposes of factfinding, receiving public comments, conducting inquiries and investigations, or other purposes ...". LSA-R.S. 30:2011(D)(2) and (5). In making a determination relative to the granting or denying of permits, the Secretary "shall act as the primary public trustee of the environment, and shall consider and follow the will and intent of the Louisiana Constitution and Louisiana statutory law." LSA-R.S. 30:2014(A). DEQ's actions must be diligent, fair, and faithful to protecting the public interest in the state's resources. Save Ourselves, 452 So.2d at 1157. "The [DEQ's] role as the representative of the public interest does not permit it to act as an umpire passively calling balls and strikes for adversaries appearing before [the Secretary]; the rights of the public must receive active and affirmative protection at the hands of [DEQ]." Save Ourselves, 452 So.2d at 1157. The statutory framework places on the DEQ Secretary the burden of exercising responsible discretion to determine each permit application's substantive result.
Although the Legislature gave DEQ the primary responsibility for protecting the environment, the Legislature also provided statutory due process mechanisms to allow the participation of interested individual citizens and groups of citizens. In some instances, the statutes provide for mandatory public hearings to allow for public comment and reaction to proposed environmental actions or agency rule changes. See e.g. LSA-R.S. 30:2011(D)(1), 30:2011(D)(5), 30:2011(D)(24)(c)(ii), 30:2158(A)(4). An interested citizen may file a civil action in district court on his own behalf against any person whom he alleges to be in violation of environmental statutes or regulations, subject to certain limitations. LSA-R.S. 30:2026. The remedies available include damages, civil *1263 penalties, injunctive relief, costs and attorney fees.
This legislatively authorized participation of the public achieves two goals, public input in substantive environmental matters and "a safeguard against abuses in the administrative process." Concerned Citizens v. Lake Charles Refining, 387 So.2d 1330, 1333 (La. App. 1 Cir.), writ refused, 392 So.2d 693 (La.1980).
WOW relies on LSA-R.S. 30:2024 as statutory authority for its appeal to the First Circuit. The statute sets forth the effective date of any enforcement or permit action and provides the procedure for appeals. At the time the permit was granted, the statute provided in pertinent part:
§ 2024. Finality of action; trial de novo; appeals
A. Any enforcement or permit action shall be effective upon issuance unless a later date is specified therein. Such action shall be final and shall not be subject to further review unless, no later than twenty days after the notice of the action is served by certified mail or by hand upon the respondent, he files with the secretary a request for hearing. Upon timely filing of the request, the secretary shall either grant or deny the request within twenty days. If the request for hearing is granted, the issues raised in the request shall be resolved by an adjudicatory hearing before a hearing officer. Any appeal from a final decision of the secretary shall be in accordance with the provisions of R.S. 30:2024(C). If the request for hearing is denied, or the secretary does not act on the request within twenty days after the timely filing, the respondent shall, within twenty days from the denial or the lapse of the period for the secretary to act, be entitled to file an application for de novo review of the secretary's action in the Nineteenth Judicial District Court for the parish of East Baton Rouge.
* * * * * *
C. Any person aggrieved by a final decision or order of the secretary may appeal therefrom to the Court of Appeal, First Circuit, if a motion for an appeal is filed with the secretary within thirty days after the final decision or order is served upon the respondent. Any preliminary, procedural, or intermediate ruling or decision by the secretary is subject to the supervisory jurisdiction of the appellate court as provided by Article V, Section 10 of the Constitution of Louisiana. The Court of Appeal, First Circuit, shall promulgate rules of procedure to be followed in taking and lodging such appeals. The provisions of R.S. 49:962 and 964 shall not apply to decisions and orders of the secretary. (emphasis supplied)[3]
* * * * * *
WOW and American Waste argue for conflicting interpretations of the phrase "final decision or order" in R.S. 30:2024(C), both of which find support in prior First Circuit decisions. WOW argues the term "final decision or order" means any action taken by the DEQ Secretary which considers the merits of an issue. See Matter of Marine Shale Processors, Inc., 563 So.2d 278 (La.App. 1 Cir. 1990); Matter of Recovery I, Inc., 622 So.2d 272 (La.App. 1 Cir.), writ denied, 629 So.2d 383 (La.1993).
American Waste argues the phrase should be understood as defined in the Administrative Procedures Act (APA), LSA-R.S. 49:951(3), and as that phrase was interpreted in Delta Bank & Trust Co. v. Lassiter, 383 So.2d 330 (La.1980). See Matter of Carline Tank Services, Inc., 626 So.2d 358 (La.App. 1 Cir.), rehearing denied, 627 So.2d 669 (La.App. 1 Cir.1993); Matter of Industrial Pipe, Inc., 626 So.2d 364 (La.App. 1 Cir. 1993). Under this interpretation, in order to be a "decision or order," the disposition must be required by constitution or statute to be preceded by notice and an opportunity for a hearing; and, if required, the hearing held must be an adjudication. An adjudicatory hearing is similar to a trial in that evidence is *1264 presented on the facts and law at issue. LSA-R.S. 49:955. Since only two public hearings were held in this case, and no adjudicatory hearing, American Waste argues no decision or order was reached which WOW could appeal.
It is unnecessary to look to the APA, or this Court's interpretations of the APA's requirements, however, to decide whether the acting-Secretary's grant of the permit was a final decision or order. Subsection A of R.S. 30:2024 provided at the time the permit was granted that, as between the permittee (American Waste) and DEQ, a permit action shall be final when issued (unless a later date is specified) unless American Waste files a request for a hearing with the DEQ Secretary within twenty days. Since no hearing was requested by American Waste, the agency action is final. There is no reason why the DEQ Secretary's final action should not be appealable for a person aggrieved by that action.
The rules of statutory interpretation support this conclusion. The language of the statute, the starting point of analysis, is not free from ambiguity. American Waste argues the phrase "final decision or order" may only be understood after reference to the APA. WOW argues the phrase should be understood in its ordinary and common sense meaning.
Because the statute is susceptible of different meanings, it is necessary to ascertain the legislative intent. Touchard v. Williams, 617 So.2d 885 (La.1993). The title or preamble of an act may be used to determine legislative intent. La. Associated Gen. Contr. v. Calcasieu, 586 So.2d 1354 (La.1991); Green v. Louisiana Underwriters Ins. Co., 571 So.2d 610 (La.1990). In addition, the act as a whole must be considered in order to ascertain the meaning of any phrase. Green, 571 So.2d at 613.
R.S. 30:2024 has undergone several amendments since its enactment as R.S. 30:1072 by 1979 Acts No. 449. The title of the statute was then "Commission Hearing" and the preamble stated, in pertinent part, that the act's purpose was "to create and provide with respect to the Environmental Control Commission [the precursor of the DEQ] and the office of environmental affairs of the Department of Natural Resources and their powers, duties, functions, and responsibilities."
Preambles to subsequent amendments have stated, in pertinent part, the purpose of the acts was "to provide for the effective time of orders" (1980 Acts No. 194), "to provide for appeals of any enforcement or permit action taken by the assistant secretary of the office of environmental affairs or the commission" (1982 Acts No. 322; title of the statute changed to "Finality of actions; appeals"), "to provide for appeals from decisions of the secretary of the Department of Environmental Quality" (1984 Acts No. 795), "to provide that any enforcement or permit action shall be effective upon issuance unless a later date is specified; to provide appeals of any enforcement or permit action to the commission, to provide that any person aggrieved by a final decision or order of the commission may appeal to the Court of Appeal, First Circuit" (1984 Acts No. 825), "to provide for hearings on enforcement and permit actions, to provide for appeals, to provide for time limitations" (1990 Acts No. 197), and "to provide for finality of action, and appeals" (1991 Acts No. 846).
When the preambles and all the provisions of R.S. 30:2024 are considered together, see Green, 571 So.2d at 613, it is evident the overall intent of the Legislature was to provide for finality of certain DEQ actions for respondents and parties affected by those actions, and to set forth appeal procedures.
The APA enunciates general procedural rules for administrative agencies. R.S. 30:2024 sets forth special procedural rules for appeal of DEQ actions. The APA "was not intended to supersede the specific provisions of other administrative acts, or to supersede the rights and remedies created under those acts. Instead, it was intended to create procedures in those instances where none existed." Corbello v. Sutton, 446 So.2d 301, 303 (La.1984). "When two statutes are in conflict, the statute that is more specifically directed to the matter at issue must prevail as an exception to the statute that is more general." Smith v. Cajun Insulation, Inc., *1265 392 So.2d 398, 402 (La.1980). Thus, the specific statutory definition of a final and appealable DEQ action in R.S. 30:2024 should prevail over the general appeal procedures in the APA.
In construing the meaning of statutes, "courts must endeavor to give an interpretation that will give them effectiveness and purpose, rather than one which makes them meaningless." State v. Union Tank Car Co., 439 So.2d 377, 382 (La.1983); Smith, 392 So.2d at 400. Under the interpretation urged by American Waste, the appeal provisions of Section 2024(C) would be meaningless.
There is no statutory or constitutional requirement for DEQ to hold an adjudicatory hearing on a permit action for a solid waste facility. Blackett v. Dept. of Environ. Quality, 506 So.2d 749 (La.App. 1 Cir.1987). Although persons with a substantial interest may intervene in the agency determination under DEQ Rules of Procedure, see Rules of Procedure, Louisiana Environmental Control Commission [precursor to DEQ], Rule 5.1(B), even parties to the agency action are not assured of a requested adjudicatory hearing. See Matter of Carline Tank Services, Inc., 626 So.2d at 361. The decision to hold an adjudicatory hearing after a party requests one is within the DEQ's discretion. See R.S. 30:2024(A).
The only way for a party aggrieved or a respondent, permittee, or intervenor to invoke an adjudicatory hearing at the agency level, when there is no constitutional or statutory requirement for an adjudicatory hearing, is solely within the discretion of DEQ. Thus, under American Waste's interpretation, DEQ would have sole discretion as to which actions were entitled to judicial review. In this case, agency action was taken despite repeated public requests for an adjudication.
This interpretation frustrates the legislative goal of authorizing aggrieved parties judicial review of agency abuses in Section 2024(C) and would deny citizens judicial review of environmental decisions which may have an immediate and sustained impact on their health and property. This Court has previously recognized that the legislature enacted laws to respect the right of private citizens to litigate environmental matters. Regarding R.S. 30:2024(C), the Court stated "[t]his right of `aggrieved' persons ... no doubt includes the opponents and parties who have been permitted to intervene in the DEQ permit action." Matter of American Waste, 588 So.2d at 372.
We find, therefore, that a final decision of the DEQ Secretary in this permit action was rendered on January 9, 1992, when Judge Redmann, acting as DEQ Secretary pro tempore, granted American Waste a standard permit for the construction, installation and operation of a solid waste facility at Cade II. This action was final and appealable under the provisions of R.S. 30:2024(C) when American Waste failed to request a hearing within the time constraints of R.S. 30:2024(A).
The court of appeal's action vacating the DEQ permit grant utilized the proper analysis and correctly remanded the matter to DEQ. In Save Ourselves, the standard of judicial review provided by LSA-R.S. 49:964 was applied by analogy to the quasi-judicial decisions of the DEQ Secretary.
"Pursuant to § 964, a reviewing court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (6) manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record." Save Ourselves, 452 So.2d at 1158.
On review, a court should not reverse a substantive decision of DEQ on its merits unless it can be shown that the Secretary was arbitrary or clearly gave insufficient weight to environmental protection in balancing the costs and benefits of the proposed action. The court must reverse, however, if *1266 the decision was reached "without individualized consideration and balancing of environmental factors conducted fairly and in good faith." Id., at 1159.
In making a decision, DEQ "is required to make basic findings supported by evidence and ultimate findings which flow rationally from the basic findings; and it must also articulate a rational connection between the facts found and the order issued." Id. Although the court will uphold a decision of less than ideal clarity if the agency's reasoning may be easily discernible on the record, it will not supply a finding from the evidence or a basis for the action which was not found by the Secretary. Id., at 1160. Only by detailing its reasoning does the DEQ uphold its position as public trustee and justify the discretion with which it is entrusted by constitutional and statutory authority in a contested environmental matter. Id., at 1159-60.
We find, as did the court of appeal, that the Secretary pro tempore did not list his basic findings or his ultimate findings, nor did he articulate a rational connection between his factual findings and his order, as required in Save Ourselves. Instead, his written decision contains only conclusions without stated bases. It cannot be determined from this order whether the Secretary pro tempore balanced the benefits of the Cade II proposed project against the site's inherent environmental risks, particularly the danger of Chicot Aquifer contamination. Nor can these important considerations be determined from the record. While the Secretary pro tempore found the proposed site would pose no "unreasonable danger" to clean air and water resources, and rejected an absolute such as "maximum protection" of the environment, he failed to utilize the constitutional standard enunciated in Save Ourselves which requires the agency "to determine that adverse environmental impacts have been minimized or avoided as much as possible consistently with the public welfare." Id., 452 So.2d at 1157. We, therefore, affirm the court of appeal's decision to vacate the order granting American Waste's permit application for a solid waste disposal facility at the Cade II site.

MOTION TO DISMISS
American Waste filed a motion to dismiss for lack of subject matter jurisdiction, arguing this Court's pronouncement in Matter of American Waste that DEQ determinations are not "civil matters" divests the court of appeal of its jurisdiction. American Waste reads the Court's prior opinion too narrowly. The Court held DEQ determinations are not "civil matters" within the scope of the district court's grant of original jurisdiction. The Court specifically found judicial review of an administrative agency decision is an exercise of the court's appellate jurisdiction and found it constitutional for the Legislature to repose such appellate review in the First Circuit Court of Appeal.

CONCLUSION
A reviewing court may remand the case for further proceedings. Save Ourselves, 452 So.2d at 1159. A remand will allow such additional hearings and agency reports as are necessary for the Secretary to reach a decision on American Waste's permit application consistent with the constitutional, statutory, and jurisprudential standards detailed above.
For the foregoing reasons, the matter is remanded to DEQ for further proceedings.
MOTION TO DISMISS DENIED; COURT OF APPEAL AFFIRMED AND CASE REMANDED TO THE LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
KIMBALL, J., dissents and assigns reasons.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I disagree with the majority's conclusion that WOW is an aggrieved party entitled to appeal under La.R.S. 30:2024(C).
La.R.S. 30:2024(A) refers to an "action": "any enforcement or permit action shall be effective upon issuance unless a later date is specified therein. Such action shall be final...." *1267 (emphasis added). By contrast, La. R.S. 30:2024(C) provides "any person aggrieved by a final decision or order of the secretary may appeal...." "Decision or order" is defined under the Administrative Procedures Act (APA).[1] As we stated in Delta Bank & Trust Co. v. Lassiter, 383 So.2d 330, 333 (La.1980), a decision or order results from an adjudication and is defined as "a disposition required by constitution or statute to be made after notice and a hearing." Since no adjudicatory hearing was held in the present case, it follows that WOW has no right to appeal.[2]
Accordingly, I respectfully dissent from the majority's opinion.
KIMBALL, Justice, dissenting.
For the reasons assigned by Justice Marcus, and for the additional reasons noted below, I disagree with the majority's conclusion that the granting of a permit of a solid waste disposal facility without an agency adjudication is a "final decision or order" pursuant to LSA-R.S. 30:2024(C).
R.S. 30:2024(C) provides for an appeal to the Court of Appeal, First Circuit when any person is aggrieved by a "final decision or order" of the secretary of the Department of Environmental Quality. The statute further provides that "[t]he provisions of R.S. 49:962 and 964 shall not apply to decisions and orders of the secretary."
A review of these exempted portions of the Administrative Procedure Act reveal an intent on the part of the legislature, in my opinion, to redesignate the appellate scheme relative to environmental cases. While the Administrative Procedure Act provides for judicial review of "final decisions or orders" of all agencies in state government, R.S. 49:964 provides for that procedure in most cases by "filing a petition in the district court of the parish where the agency is located." By exempting the Department of Environmental Quality from this provision and replacing it with a judicial review procedure in the Court of Appeal, First Circuit, the legislature merely created a change in the appellate procedure for environmental matters which relieved those persons "aggrieved by a final decision or order" of a primary review in the district court. This effect of the exemption of R.S. 49:964 has been previously recognized by this Court in Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984). Therein, Justice Dennis determined "[t]he change in appellate forum for environmental cases appears to have been the only reason for making § 964 inapplicable to them." Id., at 1158.
The remainder of the review procedure in R.S. 30:2024(C) is consistent with the Administrative Procedure Act and provides, as does the APA, an aggrieved person review of "a final decision or order." Since the Administrative Procedure Act is applicable to the Department of Environmental Quality, as it is to any other agency of state government, we must logically look to definitions contained in R.S. 49:951. The relevant section of the APA applicable to this dispute is R.S. 49:951(3). In pertinent part, that statute provides:
"Decision" or "order" means the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of any agency ... required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing ..."
The rationale of requiring appellate review only after an agency hearing is further bolstered by R.S. 49:955(E) which provides for designating part of the record for appeal. A *1268 cursory review of the "record" in this case reveals the difficulty of a reviewing court in either forum having before it entire agency files containing self serving letters, opinions without opportunity for cross examination, handwritten notes from meetings, newspaper articles, affidavits and assertions of facts from attorneys and others and various other types of "evidence."
The majority, in my opinion, incorrectly assumes that by delineating the time of finality of a permit action, Subsection A of R.S. 30:2024 somehow converts a permit action to a final "decision or order." It appears to me, however, that a clear reading of the subsection reveals its meaning to be temporal rather than substantive.
In this case, since an adjudicatory hearing was not "required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing."[1] I do not believe that the appellate procedure available in R.S. 30:2024 is applicable.
For the foregoing reasons, I respectfully DISSENT.
NOTES
[1] Pursuant to Rule IV, Part 2, § 3, Shortess, J., Court of Appeal, First Circuit, sitting pro tempore for Dennis, J. was recused and was not on the panel which heard and decided this case. See the footnote in State v. Barras, 615 So.2d 285 (La.1993).
[2] Amicus curiae briefs were received from the Attorney General for the State of Louisiana, Louisiana Chemical Association, the City of Baton Rouge/Parish of East Baton Rouge, Louisiana Citizen Action, Gulf Coast Tenants Organization, Louisiana Environmental Action Network, Southern Christian Leadership Conference, Association of Community Organizations for Reform Now, North Baton Rouge Environmental Association, Concerned Citizens of Northeast Louisiana, Concerned Citizens of CENLA, Delta Greens, League of Women Voters of Louisiana, Orleans Audubon Society, Sierra Club-Delta Chapter, Calcasieu League for Environmental Action Now, and Secure Environment for Everyone.
[3] By 1993 amendment, the statute now designates the provisions of Subsection A into subparagraphs and increases the time limits for a respondent or permittee to request a hearing in § 2024(A) from twenty to thirty days. Other stylistic changes were made which are not at issue here.
[1] The majority finds that it is unnecessary to look to the APA, and decides the issue solely under La.R.S. 30:2024. However, La.R.S. 30:2024(C) makes it clear that the only sections of the APA which do not apply are La.R.S. 49:962 and 964. It does not prohibit application of La.R.S. 49:951, which provides the definition of decision or order.
[2] Further support for this reasoning can be found in La.R.S. 30:2024(A). After a final action, the respondent has twenty days to request a hearing. If the hearing is granted, the issues are resolved by adjudicatory hearing. Any appeal from the resulting final decision are in accordance with La.R.S. 30:2024(C). By contrast, if the request for hearing is denied, the respondent is entitled to file an application for review of the secretary's action in the 19th JDC.
[1] It is noteworthy that the DEQ Regulations themselves require that "[a]djudicatory or adjudicative hearings, as contemplated by the Louisiana Administrative Procedures Act, ... shall be held for all administrative enforcement proceedings under LRS 30:1073 [now 30:2024] (emphasis supplied), upon all permit applications for commercial hazardous waste disposal facilities, when permits or licenses are sought to be revoked, and in those instances where the Commissioner or the Assistant Secretary determines that equity and justice requires an adjudication." Rule of Procedure 5.0 of the Environmental Control Commission.