JaLOTTINGER, Chief Judge.
Appellants, Tioga Environmental Action Committee and Concerned Gitizens of CEN-LA, appeal from the judgment of the district court, upholding a decision of .the Department of Environmental Quality (DEQ) granting Cadence Environmental Energy Inc. (Cadence) a permit for commercial storage of hazardous waste.
FACTS AND PROCEDURAL HISTORY
In June of 1993, Cadence submitted an application for a commercial hazardous storage facility permit to the DEQ. After an adjudicatory hearing followed by a public hearing, and an extended public comment period, the Secretary of the DEQ granted a final permit to Cadence on April 17, 1995. At the time the final permit was granted, the DEQ also issued a summarized response to issues as part of the permit package, entitled the “Responsiveness Summary.” On July 11, 1995, the Secretary of the DEQ signed an affidavit, stating that he adopted and incorporated into the decision to grant Cadence’s permit the factual finding and conclusions of law contained in the Responsiveness Summary.
An application for appeal of the April 17, 1995 decision was filed in May of 1995 and subsequently granted by the DEQ.
On June 28, 1996, this court transferred the appeal to the Nineteenth Judicial District Court pursuant to 1996 La. Acts. 1st Ex. Sess. No. 41. In the Matter of Cadence Environmental Energy, Inc., 95-1918 (La. App. 1st Cir. 6/28/96).[1]
The district court subsequently rendered judgment on October 8, 1996, affirming the DEQ’s issuance of the permit to Cadence. Appellants now appeal from this judgment.[2]
^DISCUSSION
The duties of the Secretary of the DEQ were succinctly stated by the Louisiana Supreme Court in Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152, 1157 (La.1984), wherein the court held:
The agency is required to use a systematic, interdisciplinary approach to evaluation of each hazardous waste project or facility. La. R.S. 30:1141. In determining whether the proposed project fully minimizes adverse environmental effects, [DEQ] neces *938 sarily must consider whether alternate projects, alternate sites, or mitigative measures would offer more protection for the environment than the project as proposed without unduly curtailing non-environmental benefits.
In Blackett v. Louisiana, Department of Environmental Quality, 506 So.2d 749, 754 (La.App. 1st Cir.1987), we summarized the Secretary’s considerations into five categories:
First, have the potential and real adverse environmental effects of the proposed facility been avoided to the maximum extent possible? Second, does a cost benefit analysis of the environmental impact costs balanced against the social and economic benefits of the proposed facility demonstrate that the latter outweighs the former? Third, are there alternative projects which would offer more protection to the environment than the proposed facility without unduly curtailing non-environmental benefits? Fourth, are there alternative sites which would offer more protection to the environment than the proposed facility site without unduly curtailing non-environmental benefits? Fifth, are there mitigating measures which would offer more protection to the environment than the facility as proposed without unduly curtailing non-environmental benefits?
In reaching a decision, the DEQ must consider and abide by the admonition from the supreme court that it “is required to make basic findings supported by evidence and ultimate findings which flow rationally from the basic findings; and it must articulate a rational connection between the facts found and the order issued.” In the Matter of American Waste and Pollution Control Co., 93-3163, pp. 18-19 (La.9/15/94); 642 So.2d 1258, 1266, quoting Save Ourselves. Only by detailing its reasoning does the DEQ uphold its position as public trustee and justify the discretion with which it is entrusted by constitutional and statutory authority in a ^contested environmental matter. In the Matter of American Waste and Pollution Control Co., 642 So.2d at 1266.
In this ease, the Secretary of the DEQ adopted and incorporated into the decision on Cadence’s permit the factual findings and conclusions of law contained in the Responsiveness Summary. We find that the action of the Secretary of the DEQ falls far short of the mandates set forth in Save Ourselves and In the Matter of American Waste and Pollution Control Co. See In the Matter of CYTEC Industries, Inc., 94-1693, p. 3 (La.App. 1st Cir. 2/23/96); 672 So.2d 179, 181. As noted by this court in In the Matter of Rubicon, Inc., 95-0108, pp. 11-12 (La.App. 1st Cir. 2/14/96); 670 So.2d 475, 483:
A decision would be more in conformity with the above mandates if it at least contained: 1) a general recitation of the facts as presented by all sides; 2) a basic finding of facts as supported by the record; 3) a response to all reasonable public comments; 4) a conclusion or conclusions on all issues raised which rationally support the order issued; and 5) any and all other matters which rationally support the DEQ’s decision.
In particular, we note the absence of any evidence which would support DEQ’s compliance with La. R.S. 30:2179 B(4), which provides as follows:
The secretary shall not issue any permits or licenses for the handling, treatment, destruction, and disposal of solid or hazardous waste which would increase the total permitted capacity of Louisiana to manage or dispose of such waste in an amount in excess of fifteen percent greater than the necessary total permitted capacity of this state as determined by the secretary pursuant to Paragraph (1) of this Subsection. The secretary shall reassess on a quarterly basis the capacity necessary to handle, treat, destroy, manage, and dispose of wastes generated in Louisiana and shall insure that there is sufficient capacity to maintain the capacity within Louisiana to so handle, treat, destroy, manage, and dispose of these wastes at the level and in that amount as required in this Paragraph. However, the secretary may vary the total permitted capacity above the fifteen percent limitation for any year by rule adopted in accordance with the Administrative Procedure Act, R.S. 49:950 et seq., provided the secretary finds, based on reli *939 able evidence in the record of a public hearing on the proposed rule, that failure to increase the total permitted capacity above the limitation required by this Section will result within one year in insufficient capacity for the proper handling, treatment, storage, and disposal of solid or hazardous waste generated in the state.
Essentially, the DEQ- sets forth two arguments in brief: (1) this statute is inapplicable here because the Cadence operations will reduce, not increase, Louisiana’s capacity 15load; and (2) any waste produced by Cadence will be generated by handling, analysis, and cleanup procedures and too is minimal to invoke the capacity statute. However, the record contains neither these determinations made by the DEQ nor the evidence upon which these determinations were based.[3]
CONCLUSION
Accordingly, the April 17,1995 final permit issued to Cadence is vacated and set aside; this action is remanded to the DEQ for issuance of a final decision consistent with the standard enunciated by this court in In the Matter of Rubicon, Inc. Costs are assessed against the DEQ in the amount of $859.86.
VACATED AND REMANDED.

. In In the Matter of Angus Chemical Company, 94-1148 (La.App. 1st Cir. 6/26/96); 679 So.2d 454, this court upheld the constitutionality of Act 41 of the First Extraordinary Session of 1996. Specifically, Act 41 amended La. R.S. 30:2050.21 to grant the Nineteenth Judicial District Court jurisdiction of appeals of final permit actions, final enforcement actions and. declaratory actions. Act 41 also enacted La. R.S. 30:2050.31, which provides that a final judgment of the Nineteenth Judicial District court may be appealed to this court.

. The two assignments of error are as follows:
I. The DEQ's Decision in this Matter Violates the Hazardous Waste Regulations, the Louisiana Environmental Quality Act, and the Louisiana Constitution.
a. The DEQ's decision to eliminate the 200-foot buffer zone for the Cadence facility violated applicable regulations and the Louisiana Constitution.
b. The DEQ decision granting Cadence’s permit to store hazardous waste violate its duties under Louisiana’s Hazardous Waste Control Law.
II. The decision, by the DEQ, to grant Cadence a permit for commercial storage of hazardous waste is arbitrary, capricious, manifestly erroneous, and characterized by an abuse of discretion because the DEQ failed to supply findings of fact and conclusions of law which supported its decision to grant the permit.

. On page 10 of the Responsiveness Summary, the DEQ responds to a specific comment about the Cadence permit violating the capacity statute as follows:
Cadence's proposed facility would allow for the storage of hazardous waste derived fuel during times of lower cement output, providing a more efficient distribution system. Cadence has adequately demonstrated a need for this type of facility. By allowing for storage of hazardous waste derived fuels, Cadence will promote the recovery of energy value from hazardous waste; the fuels are destined for use in cement kilns. The use of hazardous waste-derived fuel has been recognized by the USE-PA and the LDEQ as a legitimate alternative to handling hazardous waste.
Cadence will benefit Louisiana as its operation will include taking waste from Louisiana for export to other states for final disposition. The disposal of these wastes will, therefore, be shifted to another state.