626 So.2d 358 (1993)
In the Matter of CARLINE TANK SERVICES, INC.
No. CA 92 0604.
Court of Appeal of Louisiana, First Circuit.
April 23, 1993.
Rehearing Denied August 13, 1993.
Frank S. Craig, III, William F. Ridlon, II, Breazeale, Sachse & Wilson, Baton Rouge, for appellant Carline Tank Services, Inc.
James Thompson, Harry B. Ward, Office of Legal Affairs & Enfor., Baton Rouge, for appellee State of La., thru the Dept. of Environmental Quality.
Before WATKINS, CRAIN and GONZALES, JJ.
*359 GONZALES, Judge.
This matter is on appeal from a decision of the Louisiana Department of Environmental Quality (hereinafter "DEQ"). In the proceedings below, appellant, Carline Tank Services, Inc. (hereinafter "Carline"), opposed the granting of an air emission permit for a barge cleaning operation to T.T. Barge Cleaning Mile 183, Inc. (hereinafter "T.T. Barge"), which was issued by DEQ on November 12, 1990. Carline's request for hearing was denied on November 27, 1990. Carline petitioned for an appeal on December 28, 1990. On appeal, Carline asserts the following assignments of error:
1. As public trustee of the environment, DEQ erred in granting the T.T. Barge permit by failing to abide by the Louisiana Constitution and applicable statutory law.
2. DEQ erred in violating Section 5 of the Rules of Procedure for the Louisiana Environmental Control Commission by denying Carline's Petition for an adjudicatory hearing filed on November 7, 1990, subsequent to the granting of the T.T. Barge permit and not "prior to taking the action for which the complaint has been made". And, since DEQ delayed more than ten days from the date it issued the permit on November 12, 1990 until it denied Carline's Petition, thereby denying Carline the opportunity to seek review of the DEQ Assistant Secretary's decision by the DEQ Secretary pursuant to Section 8 of the Rules of Procedure for the Louisiana Environmental Control Commission and seeking a stay of the permit decision from the DEQ Secretary.
3. DEQ, through Assistant Secretary McDaniel, erred in affirmatively misleading Carline in his October 2, 1990 letter stating that he would "promptly" notify Carline of the final decision on the T.T. Barge permit when it was made. However, DEQ never did communicate the decision to Carline and only after Carline reviewed the DEQ file on T.T. Barge after receiving on November 30, 1990 the letter dated November 27, 1990 did Carline learn that the permit had been previously issued.
4. DEQ erred in failing to consider all public comments concerning T.T. Barge, including the various requests to hold hearings, DEQ's own public records, the public records of other agencies concerning T.T. Barge, and the public statements of employees of the DEQ Air Quality Division concerning repeated violations of DEQ Air Quality Regulations at the Ascension Parish facility prior to the issuance of an air emissions permit to that facility, and/or violations of the Hazardous Waste Regulations at that facility and the Jefferson Parish facility, and/or violations of the Water Quality Regulations at the Jefferson Parish facility.
5. The decision not to hold any kind of hearing, despite repeated requests by Carline, was arbitrary, capricious and an abuse of discretion.
6. DEQ erred in issuing T.T. Barge a "draft" permit with, allegedly, a public notice period being set thereafter, after which time the "draft" permit was amended and issued but no additional public notice period was given by DEQ nor did DEQ consider its own records, allegations of its own employees or the public records of other agencies concerning the violation history of T.T. Barge.
7. DEQ erred in the fact finding process in failing to consider that there are not readily available fire protection or emergency services in the area of T.T. Barge's Ascension Parish facility and that the public at large would be harmed without such services in the event of a catastrophe.
8. DEQ erred in failing to adequately consider the previous violation in compliance history of T.T. Barge and in the violation in compliance history of Geismar Marine, the previous owner or operator of the site of the T.T. Barge Ascension Parish facility.
9. DEQ erred in issuing a permit when the permit applicant failed to clearly *360 demonstrate that the permit met the requirements for issuance of that permit.
10. DEQ erred in failing or refusing to consider its own records concerning the violation and compliance history of both the Ascension and Jefferson Parish facilities of T.T. Barge despite the fact that DEQ's own internal memoranda show that DEQ intended to consider violation and compliance history of both facilities.
11. DEQ erred in issuing the permit without first determining whether the Office of Water Resources' records contained information on T.T. Barge's violation and compliance history when, although the Air Quality Division, Permits Section requested that information, there was no response from the Office of Water Resources.
12. DEQ erred in failing to prepare a record in compliance with Rule 9.3 of the Rules of Procedure of the Louisiana Environmental Control Commission, the requirements of the Louisiana Administrative Procedure Act, La.R.S. 49:951, et seq., and the requirements of the constitutional-statutory governing environmental issues in Louisiana, in that DEQ's preparation of the record failed to ensure that all matters required to be addressed were raised and considered prior to its decision to issue the permit.
13. DEQ erred in failing to consider the "IT" factor "Are there any alternative sites which would offer more protection to the environment than the proposed activity site without unduly curtailing non-environmental benefits?", when, as here, T.T. Barge advised DEQ more than a year prior to DEQ's decision to issue the permit that T.T. Barge could move its operations from the Jefferson Parish facility to a location other than the Ascension Parish facility.
The powers and duties of DEQ are set forth in La.R.S. 30:2011, which provides in pertinent part:
D. The secretary shall have the following powers and duties:
....
(5) To hold meetings or hearings on his own motion or upon complaint for purpose of factfinding, receiving public comments, conducting inquiries and investigations, or other purposes under this Subtitle, and, in connection therewith, to issue subpoenas in accordance with R.S. 30:2025(I) requiring the attendance of such witnesses and the production of such documents as are related to the meeting or hearing.
Further, the secretary of DEQ is vested with the power to grant all "permits, licenses, registrations, variances and compliance schedules" authorized by the Louisiana Environmental Quality Act. La.R.S. 30:2014(A.). Rules of procedure governing processing and review of permit applications are promulgated by DEQ. See La.R.S. 30:2022. At the time this matter was before the DEQ, the Louisiana Environmental Control Commission ("ECC") rules of procedure were still in effect.[1] Rule 5.0 of the ECC rules of procedure provides[2]:
5.0. APPLICABILITY. Adjudicatory or adjudicative hearings, as contemplated by the Louisiana Administrative Act, LRS 49:91 et seq., shall be held for all administrative enforcement proceedings under LRS 30:1073[[3]], upon all permit applications for commercial hazardous waste disposal facilities, when permits or licenses are sought to be revoked, and in those instances where the Commission or the Assistant Secretary determines that equity *361 and justice requires an adjudication. Any person possessing a real interest that might be adversely affected by action of the Commission or Assistant Secretary may petition the Commission or Assistant Secretary, in writing, to hold an adjudicative hearing. The Commission or Assistant Secretary shall accept or deny the petition, in writing, giving reasons for the decision, prior to taking the action for which a complaint has been made. The holding of an adjudicative hearing shall not limit or prevent the holding of non-adjudicatory, fact-finding hearing on the same subject matter. [Emphasis added.]
Also pertinent to this discussion are the provisions of La.R.S. 30:2024(A.):
A. Any enforcement or permit action shall be effective upon issuance unless a later date is specified therein. Such action shall be final and shall not be subject to further review unless, no later than twenty days after the notice of the action is served by certified mail or by hand upon the respondent, he files with the secretary a request for hearing. Upon timely filing of the request, the secretary shall either grant or deny the request within twenty days. If the request for hearing is granted, the issues raised in the request shall be resolved by an adjudicatory hearing before a hearing officer. Any appeal from a final decision of the secretary shall be in accordance with the provisions of R.S. 30:2024(C). If the request for hearing is denied, or the secretary does not act on the request within twenty days after the timely filing, the respondent shall, within twenty days from the denial or the lapse of the period for the secretary to act, be entitled to file an application for de novo review of the secretary's action in the Nineteenth Judicial District Court for the parish of East Baton Rouge.
The language used in both Rule 5.0 and 30:2024(A.) evidences the intent of both DEQ and the Louisiana legislature that the grant or denial of a hearing is discretionary with the DEQ. It is the "respondent" (the defendant in an enforcement action or applicant in a permit action)[4] who is discussed in La.R.S. 30:2024(A.). Clearly, the DEQ has the option of denying a hearing under section 2024(A.), thus the provision for de novo review in the Nineteenth Judicial District Court on denial of a hearing request. If a permit applicant is not automatically entitled to a hearing, then a fortiori a third party-nonapplicant who opposes a permit grant should not have an absolute right to a hearing. Thus, we interpret the provision of ECC Rule 5.0 that "[a]ny person possessing a real interest that might be adversely affected by action of the [DEQ] ... may petition the [DEQ] ... to hold ... [a] hearing" as being strictly discretionary with the DEQ.
This holding is in accord with other decisions of this circuit. In Blackett v. Louisiana Department of Environmental Quality, 506 So.2d 749 (La.App. 1st Cir.1987), a group of landowners in close proximity to a proposed landfill opposed the application of Browning-Ferris Industries, Inc. for a solid waste disposal permit. The applicable provision of the Solid Waste Rules and Regulations provided that "[p]ublic [h]earings will be held for all new or existing facilities when the Assistant Secretary determines that a hearing is necessary based on comments received and other information." 506 So.2d at 753. This court held, "DEQ, therefore, is not required to hold a hearing in every case ... whether to conduct a hearing is within the Department's discretion."
In the Matter of Shreveport Sanitary and Industrial Landfill, 521 So.2d 710 (La.App. 1st Cir.1988), involved an appeal from a decision of DEQ which granted a permit to the City of Shreveport for the construction of a landfill. The Caddo Environmental Action League appealed to this court, which held:
In permit application proceedings such as these, any member of the public may request a hearing which includes the opportunity to testify. Such a request should set forth specific "comments in support of or objection to the issuance of [the] permit."... These comments will determine *362 whether DEQ exercises its discretion to grant or deny a hearing.
In the Matter of BASF Corporation, Chemical Division, 538 So.2d 635 (La.App. 1st Cir.1988), writ granted, 539 So.2d 624 (to allow an intervention in the trial court on remand by the appellate court), writs denied, 539 So.2d 624 (La.1989), 541 So.2d 900 (La. 1989), involved a settlement that DEQ reached with BASF Corporation regarding five violations of the Environmental Quality Act and the Air Quality Regulations; BASF agreed to waive a hearing and accept a civil penalty of $66,700.00. The Sierra Club and The Ascension Parish Residents Against Toxic Pollution appealed the settlement and argued on appeal, in part, that the public has a "right to be heard" which could not be waived by the violator. 538 So.2d at 643. This court in the BASF case held that the DEQ enforcement provisions (formerly contained in La.R.S. 30:1073 and now in La.R.S. 30:2025) permit interested persons to petition for public hearings which the DEQ in its discretion may grant or deny.[5]
A review of the record reveals no abuse of discretion in failing to grant a hearing in the instant case. Therefore assignments of error 2 and 5 are without merit.
With regard to appellant's assignments of error addressing whether the air permit was properly granted and its right to an appeal therefrom, assignments of error 1, 3, 4, and 6-13, we find no right in Carline to appeal the validity of the permit grant.
Defining the exact nature of an administrative action (i.e., adjudication, or rule-making, or declaratory order, or permit, etc.) determines what procedures are applicable to that proceeding. The term "adjudication", as it is used in the Administrative Procedures Act, is defined as an "agency process for the formulation of a decision or order". La.R.S. 49:951(1); Delta Bank & Trust Company v. Lassiter, 383 So.2d 330 (La.1980). "Decision" or "order" "means the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of any agency, in any matter other than rulemaking, required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing...." La.R.S. 49:951(3); Delta Bank, 383 So.2d at 333. The supreme court in Delta Bank, id., reiterates and explains this concept as follows:[6]
[T]he Administrative Procedures Act provides for a hearing only in an adjudication. An adjudication is a proceeding resulting in an order or decision. A decision or order is, for purposes of the act, a disposition required by constitution or statute to be made only after notice and a hearing. Therefore, unless there is some provision in the constitution or statutes requiring a hearing, an agency disposition is not a "decision" or "order" as defined for purposes of the act. And unless a proceeding results in a decision or order, it is not an adjudication as defined in the act. It is apparent, then, that an adjudication for purposes of the act means an agency proceeding that results in a disposition that is required to be made (by constitution or statute) after notice is given and a hearing is held. Unless some statute or the constitution require a hearing and notice, an agency action is not an adjudication for purposes of the act. Since the act provides for hearings only if there is an adjudication, it follows that unless a hearing is required by some statute or the constitution, the provision of the act as to hearings does not apply.
The Administrative Procedures Act applies to all agencies as defined in La.R.S. 49:951(2) unless excepted by the statutes or constitutional provisions governing each individual agency. Judicial review is provided under the Administrative Procedures Act to "[a] person who is aggrieved by a final decision or order in an adjudication proceeding...." La.R.S. 49:964(A.) (emphasis added). While other provisions of the Administrative *363 Procedures Act do apply to DEQ, La.R.S. 49:964 is excepted by La.R.S. 30:2024 since special appellate provisions are contained therein which apply to DEQ.[7] However, similarly to La.R.S. 49:964(A.), La.R.S. 30:2024(C.) provides for appeal to "[a]ny person aggrieved by a final decision or order of the secretary...." (Emphasis added.) Recalling that the Administrative Procedures Act and Delta Bank define a "decision or order" as an agency proceeding that results in a disposition that is required by constitution or statute to be made after hearing and notice, the inescapable conclusion is that an appeal from a DEQ action is allowed only from a proceeding that results in a disposition that is required by constitution or statute to be made after hearing and notice.
The matter purportedly appealed by Carline herein was not a proceeding that results in a disposition that is required by constitution or statute to be made after hearing and notice. Again the pertinent ECC provision, Rule 5.0, in pertinent part provides, "Any person possessing a real interest that might be adversely affected by action of the Commission or Assistant Secretary may petition the Commission or Assistant Secretary, in writing, to hold an adjudicative hearing." (Emphasis added.) Unfortunately, this provision suffers from an internal inconsistency in that the discretionary nature of the hearing, by definition, prevents any hearing granted from being an "adjudicative" hearing. Therefore, the word "adjudicative" must be read out of that provision of Rule 5.0. Such an interpretation is consistent with the more recent rules of procedure adopted by the DEQ Office of Air Quality, found in the Louisiana Administrative Code, Title 33:III.509(Q.)(5):
The administrative authority may, upon request of any interested person made during the comment period, hold a public hearing at which persons may appear and submit written or oral comments on the air quality impact of the source, alternatives to it, the control technology required, and any other appropriate consideration. [Emphasis added.]
Since the action of DEQ complained of herein was not, by definition, a decision or order, no right of appeal lies therefrom.[8] Consequently, Carline's appeal should be dismissed.
It is necessary to recognize an important distinction to the views expressed herein with regard to this particular appellant. In those instances where a person or entity is able to claim a constitutional right to hearing, the holding expressed herein would have no application. As pointed out in Delta Bank, 383 So.2d at 334, one who may be deprived of life, liberty or property is entitled to due process of law under the Fourteenth Amendment of the U.S. Constitution and under Article 1, § 2 of our state Constitution. The supreme court went on to hold in that case that the initial requirement in any due process claim is that the claimant show the existence of some property or liberty interest which has been adversely affected by state action.[9] In Delta Bank, the applicant for hearing contested the agency action as a potential competitor of the proposed permittee; the court concluded that the agency action taken would not infringe on any property or liberty interest of that particular applicant. Likewise in the case presently before us, Carline assumed the status of a competitor of T.T. Barge throughout the DEQ proceeding. Accordingly, we find no *364 liberty or property interest of Carline has been affected.
Having thus disposed of the matters on appeal, we find it unnecessary to address the motion to strike filed by T.T. Barge.[10]
For the reasons assigned herein, the appeal of Carline Tank Services, Inc., is hereby dismissed; all costs of this appeal are to be borne by appellant.
APPEAL DISMISSED.
NOTES
[1] See La.R.S. 30:2020. However, the DEQ is currently under mandate of the legislature to "codify its rules and regulations in effect on March 1, 1992, in the Environmental Regulatory Code, and ... [to] update such codification of its rules and regulations on a quarterly basis...." La.R.S. 49:954.3 (added by La.Acts 1991, No. 735, § 2, eff. July 18, 1991).
[2] See also Louisiana Administrative Code, Title 33:III.509(Q.)(5) cited herein, infra.
[3] Former La.R.S. 30:1073 was redesignated 30:2025 following the reenactment of the environmental quality provisions by La.Acts 1979, No. 449, § 1, and redesignation by La.Acts 1987, House Concurrent Resolution No. 247.
[4] The term "respondent" in this article has previously been determined by this court to include "one to whom a permit was issued or refused." See Blackett v. Department of Environmental Quality, 506 So.2d 749, 753 (La.App. 1st Cir. 1987).
[5] The appellate court did find merit in appellants' contention that the penalty assessment was invalid without approval of the attorney general; therefore, the matter was remanded to DEQ for reassessment of the penalty.
[6] See also Blackett, 506 So.2d at 753.
[7] The supreme court in Save Ourselves, Inc. v. The Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984), notes that the only reason the Administrative Procedures Act is excepted from application to the Environmental Affairs Act is because appeal in environmental matters is directed to the court of appeal rather than to the district court as provided by the Administrative Procedures Act. 452 So.2d at 1158. However, the supreme court in the Save Ourselves decision went on to state that since the use of the Administrative Procedures Act statutory scheme in environmental cases promotes clarity of analysis, the standards of judicial review provided by § 49:964 will be applied by analogy.
[8] We express no opinion herein as to whether an application for writs to this court would be authorized by law from any proceeding for which a hearing is not constitutionally or statutorily mandated.
[9] See also In the Matter of Shreveport Sanitary and Industrial Landfill, 521 So.2d at 714.
[10] However, in an effort to provide guidance to DEQ in its future preparation of records for appellate purposes, we note that only the proceedings, items, documents, evidence, etc. actually presented to the DEQ for consideration in its decision on the matter at issue should be included in the record. Insofar as is practicable, DEQ should prepare records in accordance with Uniform RulesCourts of Appeal, Rule 2-1.