656 So.2d 29 (1995)
In the Matter of SUPPLEMENTAL FUELS, INC.
No. CA 94 1596.
Court of Appeal of Louisiana, First Circuit.
May 9, 1995.
*30 William Treeby, New Orleans, for appellant Supplemental Fuels, Inc.
Meredith Hoag Lieux, Ph.D., R. Katherine Long, Baton Rouge, for appellee State through the Dept. of Environmental Quality.
Before FOIL, WHIPPLE and KUHN, JJ.
*31 FOIL, Judge.
At issue in this appeal is whether a hazardous waste permit applicant is entitled to de novo review of a permit determination in the trial court, under La.R.S. 30:2024 A, where the Louisiana Department of Environmental Quality (DEQ) held an adjudicatory hearing on the merits of the permit application. We hold that jurisdiction to review the challenged permit decision lies in this court by virtue of La.R.S. 30:2024 C. After a thorough review of the record, we find no error in DEQ's permit decision and affirm.

FACTS
On June 29, 1992, Supplemental Fuels, Inc. (SFI), a Delaware corporation listing its principle place of business in Tennessee, filed an application with DEQ for a commercial hazardous waste permit authorizing it to construct and operate a hazardous waste treatment facility in St. Gabriel, Louisiana. The site selected for the facility was a vacant tract of pasture land situated along the Mississippi River in Iberville Parish, and was owned by Nordix, Inc., a company wholly owned by SFI's principals. SFI's proposed facility would receive hazardous waste and through a process of blending, storage and treatment of the hazardous waste, would produce a waste that was commercially viable.
In August of 1992, DEQ notified SFI that there were administrative and technical deficiencies in its application. SFI submitted additional information, and the application was deemed administratively complete by DEQ. Thereafter, in May of 1993, DEQ held a three-day adjudicatory hearing on SFI's permit application in accordance with the La.Admin.Code Title 33, § 709A. During the hearing, which was presided over by a hearing officer, SFI's owners and a number of individuals who participated in drafting SFI's permit application and in providing the technical data therein testified at length. Experts in subjects such as geology, hydrology, and engineering, among others, testified at the hearing. Members of the St. Gabriel community and various citizens groups intervened and participated in the hearing. Individuals who resided and worked in St. Gabriel told of the impact that a hazardous waste facility would have on their peaceful and tranquil community.
Following the conclusion of the hearing, DEQ received public comment on the proposed facility. The public comment period was followed by a public hearing held by DEQ on August 6, 1993. Another extended public comment period followed. A vast administrative record was compiled by DEQ on the merits of SFI's permit application.
On January 24, 1994, William Kucharski, the Secretary of DEQ, denied SFI's permit request. In written reasons for the permit denial, the Secretary focused on the fact that SFI did not consider alternative sites for its facility, finding that its selection of the St. Gabriel site was motivated by purely business and economic concerns without regard to environmental considerations.
On February 14, 1994, SFI filed a document styled as a "request for hearing" with DEQ, charging that DEQ committed a host of errors in denying the permit, including misapplying the law, and rendering a decision not supported by the record and based on facts not contained in the record. DEQ denied the request for a hearing on March 9, 1994, stating that the permit application received extensive review and consideration by DEQ, and another hearing before DEQ would serve no purpose.
SFI sought review of the DEQ permit determination by filing an application for de novo review in the 19th Judicial District Court pursuant to La.R.S. 30:2024 A(3), and as a protective measure, filed an appeal in this court seeking direct review of that determination under La.R.S. 30:2024 C. In connection with the appeal lodged in this court, SFI filed a motion to remand to the 19th Judicial District Court, contending that this court did not have jurisdiction to entertain the appeal because subject matter jurisdiction to review the DEQ action was vested in the trial court. This court referred the jurisdictional issue raised in the motion to remand to the merits.
Meanwhile, the trial court dismissed the petition filed therein, concluding that it lacked jurisdiction to review the action because this court has jurisdiction over the *32 matter. SFI appealed the trial court's dismissal to this court, which was docketed as CA 94-1878.[1]

JURISDICTION
The first issue which must be resolved by this court is the proper forum for review of the DEQ permit denial under La. R.S. 30:2024, which provides for judicial review of DEQ determinations. Subsection C of R.S. 30:2024 vests subject matter jurisdiction in this court to review a "final decision or order" of DEQ. Prior to its amendment in 1990, Subsection A of R.S. 30:2024 provided that when DEQ denied an applicant's request for a hearing on a permit action, the aggrieved party had an automatic appeal to this court.
The 1990 amendment to § 2024 A changed the review procedure with respect to permit actions. The present version of R.S. 30:2024 A provides, in pertinent part, as follows[2]:
§ 2024. Finality of action; trial de novo; appeals
A. (1) Any enforcement or permit action shall be effective upon issuance unless a later date is specified therein. Such action shall be final and shall not be subject to further review unless, no later than thirty days after the notice of the action is served by certified mail or by hand upon the respondent, he files with the secretary a request for a hearing.
(2) Upon timely filing of the request, the secretary shall either grant or deny the request within thirty days. If the request for hearing is granted, the issues raised in the request shall be resolved by an adjudicatory hearing before a hearing officer. Any appeal from a final decision of the secretary shall be in accordance with the provisions of Subsection C of this Section.
(3) If the secretary does not grant the hearing within the time provided for in Paragraph (2), the respondent shall, within thirty days thereafter, be entitled to file an application for de novo review of the secretary's action in the Nineteenth Judicial District Court for the parish of East Baton Rouge.
* * * * * *
C. Any person aggrieved by a final decision or order of the secretary may appeal therefrom to the Court of Appeal, First Circuit, if a motion for an appeal is filed with the secretary within thirty days after the final decision or order is served upon the respondent....
The first change effected by the 1990 amendment to § 2024 A was the vesting of subject matter jurisdiction in the 19th Judicial District Court to review a DEQ permit determination, where DEQ denied the applicant's request for an adjudicatory hearing. Matter of American Waste & Pollution Control Company, 597 So.2d 1125, 1128 (La.App. 1st Cir.), writs denied, 604 So.2d 1309, 1318 (La.1992). The amendment also changed the standard of judicial review to be accorded to DEQ permit determinations. In Matter of American Waste & Pollution Control Company, 597 So.2d at 1129, we explained the second change brought about by the amendment in this way:
Prior to the amendment, because an appeal existed directly to this court, review of DEQ permit decisions was confined to the record as developed before that agency. Purely factual findings were governed by the manifest error or arbitrary and capricious standards of review. See Save Ourselves Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La. 1984); La.R.S. 49:964 G(5) and (6). Even where a trial court was required, in other types of administrative proceedings, to conduct the initial judicial review of the administrative decision, that review was limited, under the Louisiana Administrative Procedure Act, to a review of the agency record. See Buras v. Board of *33 Trustees of Police Pension Fund of City of New Orleans, 367 So.2d 849, 853 (La.1979) (holding that the provisions defining the nature and scope of judicial review under the APA do not authorize a trial de novo in a reviewing court; that review is confined to the record as established before the agency, and the reviewing court may not substitute its judgment for that of the administrative agency). In contrast, at a trial de novo in an administrative proceeding, the reviewing court is not limited to the record of the agency; it is free to make its own factual findings, exercise its own discretion and substitute its own judgment for that of the administrative agency. Pardue v. Stephens, 558 So.2d 1149, 1161-1162 (La.App. 1st Cir.1989).
At the heart of the dispute in this case is the effect of the § 709 hearing on the judicial review procedure set forth in R.S. 30:2024. It is undisputed that DEQ held a full three-day adjudicatory hearing in connection with SFI's permit application prior to rendering its permit determination in accordance with the requirements of La.Admin.Code Title 33, § 709A. § 709 provides in pertinent part, as follows:
A. Adjudicatory or adjudicative hearings shall be conducted in accordance with the Louisiana Administrative Procedures Act (R.S. 49:950 et seq.) for the following:
1. all permit applications for commercial hazardous waste treatment, storage and/or disposal facilities and commercial recyclers after technical review of the application but prior to deciding to prepare a draft permit for public comment; and
2. in instances where the administrative authority determines that equity and justice requires an adjudication.
SFI argues that under the literal language of R.S. 30:2024 A(3), it is entitled as a matter of right to de novo review in the trial court because DEQ denied its request for hearing. SFI contends that the § 709 hearing has no effect whatsoever on its right to de novo review under § 2024 A because the hearing occurred before DEQ rendered its permit decision. On the other hand, SFI insists, by its literal terms, § 2024 A(3) gives it a right to a trial de novo on the merits of the permit application because DEQ denied its request for a hearing after DEQ's permit decision was made. SFI relies on the rule of statutory construction which holds that when a law is clear and free from any ambiguity, and its application does not lead to absurd results, a court must apply the law as written and engage in no further inquiry in search of the intent of the legislature. La.Civ.Code art. 9; Billiot v. B.P. Oil Company, 93-1118, p. 22 (La. 9/29/94), 645 So.2d 604, 616. It also points to a recent pronouncement by the Louisiana Supreme Court that it would be within the legislature's constitutional prerogative to vest jurisdiction in trial courts to review DEQ permit decisions de novo. See Matter of American Waste & Pollution Control Co., 588 So.2d 367, 370-71 (La.1991). SFI argues that because the law plainly applies to the facts of this case, this court must apply it as written and we may inquire no further as to whether the legislature may have intended or even contemplated that the law be applied to permit applicants such as SFI, who have been accorded a full adjudicatory hearing by the operation of law.
Appellees, comprised of DEQ, landowners and residents of the St. Gabriel community, along with numerous citizens groups, urge that the fact a full mandatory adjudicatory hearing was held by DEQ in connection with the permit request brings this case outside the scope of the review procedures set forth in Subsection A of R.S. 30:2024, and places it within the purview of this court's direct review of a "final decision or order" of DEQ under Subsection C of R.S. 30:2024. They submit that to adopt the literal construction of § 2024 A suggested by SFI, without giving due consideration to the fact that DEQ held a mandatory adjudicatory hearing in connection with SFI's permit application, would give a hazardous waste permit applicant a right to two adjudications on the merits of its permit application. Appellees submit that a second adjudication is not required by R.S. 30:2024 A. Furthermore, they contend that requiring two adjudications would be duplicative, costly, useless, and would waste the government's resources without any attendant benefits, thereby leading *34 to absurd results never intended by the legislature.
At the outset, we reject SFI's attempt to have this court ignore the fact that a full-blown mandatory adjudicatory hearing was held by DEQ in connection with DEQ's permit decision. It is precisely this fact which brings the instant case outside of the literal terms of § 2024 A. First, the entire tenor of § 2024 A's review procedure is couched in terms of DEQ's discretion to hold an adjudicatory hearing in connection with a permit matter. It has been a long-standing rule of law that in the absence of some constitutional or statutory requirement mandating an adjudicatory hearing, the holding of an adjudicatory hearing is solely within the discretion of DEQ. See Matter of American Waste and Pollution Control Company, 93-3163 p. 16 (La. 9/15/94), 642 So.2d 1258, 1265. In Matter of Carline Tank Services, Inc., 626 So.2d 358, 361 (La.App. 1st Cir.1993), this court, in discussing the present version of R.S. 30:2024 A, stated that there could be no doubt that DEQ has discretion in determining whether to hold an adjudicatory hearing, and if DEQ exercises its option to deny an adjudicatory hearing, the permit applicant is entitled to de novo review in the trial court. See also Matter of American Waste and Pollution Control Company, 93-3163 at p. 16, 642 So.2d at 1265 (stating that the decision to hold an adjudicatory hearing is within DEQ's discretion under § 2024 A). However, because of § 709 of the Administrative Code, DEQ does not have discretion in determining whether to hold an adjudicatory hearing in connection with a commercial hazardous waste permit. It must hold a full adjudicatory hearing in accordance with the Administrative Procedure Act before rendering its permit determination.
Secondly, it is obvious when reading all of the paragraphs of § 2024 A together, it is the permit applicant's request for an adjudicatory hearing that triggers the review procedures provided for therein. SFI did not have to request an adjudicatory hearing because one was already accorded it under the Administrative Code. Furthermore, when SFI did request that DEQ hold a "hearing" following DEQ's permit determination, it was actually asking DEQ to hold a rehearing to reconsider the merits of DEQ's permit determination. A rehearing is specifically provided for in the Administrative Procedure Act, La.R.S. 49:959A, which governs the conduct of the § 709 hearing.[3] Because it is a meaningful request for an adjudicatory hearing that triggers the application of the review procedures in R.S. 30:2024 A, the mere fact that SFI asked for a "hearing" after the permit determination does not automatically bring SFI within the scope of § 2024 A's review procedure.
In summary, the only thing clear about R.S. 30:2024 A's review procedure is that it gives a permit applicant the right to an adjudication on the merits of its permit application. If DEQ, in the exercise of its discretion, determines to hold an adjudicatory hearing, subject matter jurisdiction to review a final decision resulting therefrom is vested in this court under § 2024 A(2). If DEQ declines to hold an adjudicatory hearing in connection with the permit application, the applicant has a right to an adjudication in the trial court under § 2024 A(3). In the instant case, DEQ did not and could not decline to hold an adjudicatory hearing because such was mandated by law. SFI's request for a "hearing" following the conclusion of the adjudicatory hearing held by DEQ was in reality a request for a "rehearing" and not a request for another adjudicatory hearing.
For these reasons, we find that the statute does not clearly and unambiguously grant SFI a right of de novo review in the trial court, and La.R.S. 30:2024 A is susceptible to different meanings regarding its applicability to the facts of this case. Where a statute is susceptible to different meanings, a court must ascertain the legislative intent and interpret the statute as having the meaning that best conforms to the purpose of the law. La.Civ.Code art. 10; Billiot v. B.P. Oil Company, *35 93-1118, p. 14, 645 So.2d at 612; Matter of American Waste & Pollution Control Company, 93-3163, p. 13, 642 So.2d at 1264. Therefore, we must determine whether the legislature intended to afford a commercial hazardous waste permit applicant a right to de novo review in the trial court, where DEQ is mandated by law to hold an adjudicatory hearing on the merits of the permit application.
In this endeavor, we first consider an argument advanced by SFI regarding this court's jurisdiction under Subsection C. Subsection C of R.S. 30:2024 vests jurisdiction in this court to review a "final decision or order" of DEQ. SFI contends that DEQ's permit determination is not "final" and ripe for judicial review by this court because "finality" for the purposes of § 2024 C in a permit action is determined by reference to the term "final" in § 2024 A. Subsection A provides that a permit action is "final" and "not ... subject to further review" unless the applicant requests that DEQ hold an adjudicatory hearing. SFI argues that since it did request that DEQ hold an adjudicatory hearing, the DEQ permit determination was not a "final decision or order" of DEQ subject to review by this court. In short, SFI posits that its request for a hearing under § 2024 A "abated" or deferred the finality of the permit decision until the § 2024 A review was concluded.
In support of its position, SFI points to the recent case of Matter of American Waste & Pollution Control Company, 93-3163, 642 So.2d 1258. In that case, aggrieved parties sought to appeal the action of DEQ in granting a solid waste permit to this court under Subsection C of La.R.S. 30:2024. The permittee argued that this court lacked jurisdiction to entertain the appeal because an adjudicatory hearing was not held in connection with the DEQ decision, and therefore, the DEQ determination was not "final" under the terms of the Administrative Procedure Act. The Supreme Court ruled that DEQ's action in granting the permit was a final decision or order under Subsection C of R.S. 30:2024 because Subsection A of R.S. 30:2024 provides that as between DEQ and the permittee, a permit action is final unless the permittee requested a hearing. Because the permittee did not request a hearing in connection with the permit action, the court found that the agency action was "final" for the purposes of this courts' appellate jurisdiction under § 2024 C. SFI posits that the language of this case mandates that this court transfer the appeal to the trial court because the DEQ permit determination is not "final" under the dictates of American Waste since it did request a hearing under § 2024 A.
Once again, SFI asks this court to ignore reality. Unlike the American Waste scenario, a full adjudicatory hearing was held before DEQ on the merits of the application, and the language of the American Waste case is not controlling on the issue presented herein. Indeed, it would be hard to imagine any DEQ action being more "final" than the one appealed. The permit determination was made only after an adjudicatory hearing, a public comment period, a public hearing and an extended public comment period. The vast administrative record is testament to the fact that the merits of the permit application were presented to DEQ before it rendered its permit decision. Furthermore, as noted earlier, SFI's request for a "hearing," which allegedly "abates" the review by this court under § 2024 C, was actually a request for a rehearing following the conclusion of an adjudicatory hearing. We do not believe that § 2024 A's language regarding "finality" or the American Waste case mandates that this court find jurisdiction under § 2024 A and decline jurisdiction under § 2024 C.
Since we conclude that the exercise of jurisdiction by this court under § 2024 C is not foreclosed, we must decide which of La. R.S. 30:2024's two jurisdictional provisions vest subject matter jurisdiction to review DEQ's permit denial under the facts of this case. In so doing, we must construe all parts of La.R.S. 30:2024 together and give the statute a construction most consistent with the purpose of the legislature in enacting it. Backhus v. Transit Casualty Company, 549 So.2d 283, 289 (La.1989).
A court's review of an administrative tribunal's action is generally considered to be an exercise of its appellate review jurisdiction. *36 Matter of American Waste & Pollution Control, 588 So.2d at 371. Original jurisdiction, on the other hand, refers to "jurisdiction in the first instance" and "designates the adjudicative tribunal in which the initial adjudication is made." Id. at 372. Traditionally, in connection with most DEQ actions, appellate jurisdiction was vested directly in this court, thereby bypassing the trial court. In those instances, the legislature delegated the first instance adjudication to DEQ. Id. at 372.
The 1990 amendment to § 2024 A made a very significant change with respect to judicial review of DEQ permit determinations. It provides that where DEQ refused to hold an adjudicatory hearing on a permit determination, the applicant has a right to a de novo review in the trial court. The legislature designated the trial court as the adjudicative tribunal in which the merits of the permit application will be addressed because DEQ declined to act as the adjudicative tribunal. This amendment preserves DEQ's discretion in determining to act as the administrative tribunal, affords the permit applicant the right to have the merits of its permit application tested in an adjudicatory context, and ensures that a record will be compiled for appellate review purposes.
There is nothing in the history or the language of R.S. 30:2024 A to suggest that the legislature intended for there to be two adjudicative tribunals in connection with a hazardous waste permit application, which will be the result if this court adopts SFI's construction of La.R.S. 30:2024 A. Furthermore, none of the purposes behind the 1990 amendment will be served by according SFI the right to a trial de novo in the trial court. By virtue of the lengthy § 709 adjudicatory hearing, and the vast administrative record compiled therefrom, there can be no doubt that the § 709 hearing served the important record compilation goal behind the 1990 amendment to § 2024 A.
SFI weakly attempts to argue that it is in "need" of de novo review in the trial court because it believes that the DEQ decision is based on information not contained in the record, and insists that § 2024 A(3) was designed for just such situation, since it must go to court and put on evidence to prove this assertion. However, a claim that an administrative decision is not supported by facts is grounds for challenging the DEQ determination in an appeal of that ruling, and is easily reviewable on the administrative record. See Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152, 1158-59 (La.1984).
In fact, SFI can show no real purpose behind § 202 A that will be fulfilled by granting it a right to de novo review thereunder. SFI cannot demonstrate that there is a realistic need for it to put on additional evidence in the trial court. A second adjudication in the trial court on the merits of the permit application will be duplicative, costly, and wasteful of the government's time and resources. By urging this court to ignore the effect of the § 709 hearing on the review procedures set forth in § 2024 A, SFI seeks to have this court find that the legislature intended to give commercial hazardous waste permit applicants preferential treatment in the administrative scheme. Instead, we conclude that the legislature did not intend to afford a hazardous waste permit applicant a right to two adjudications on the merits of its permit application. We hold that the review procedures set forth in R.S. 30:2024 apply only where DEQ has discretion to grant or deny a permit applicant an adjudicatory hearing. Where DEQ must, by the operation of law, hold an adjudicatory hearing and does in fact hold a full adjudicatory hearing in connection with a permit application, jurisdiction to review a final DEQ determination resulting therefrom is vested in this court under La.R.S. 30:2024 C.
Since we have already dismissed SFI's complaint that the DEQ action at issue is not "final" for the purpose of this court's appellate jurisdiction under La.R.S. 30:2024 C, we maintain the instant appeal pursuant to § 2024 C. Accordingly, we deny SFI's request to remand the case to the 19th Judicial District Court, and we shall review the permit action challenged by SFI.

REVIEW OF DEQ'S PERMIT DENIAL
In written reasons for denying SFI's permit request, the Secretary of DEQ stated *37 that SFI did not give due consideration to alternative sites for its proposed facility from an environmental standpoint. The Secretary stated that "[g]iven the service area which is at least statewide, if not nationwide, and the lack of any environmentally based siting criteria for this site or any alternative sites and being mindful of my duty as primary trustee of the environment, I am denying the permit."
SFI attacks the permit denial on numerous bases, which can be summarized into several categories.[4] First, SFI urges that the permit denial is based on the Secretary's erroneous legal conclusion that the failure to consider alternative sites for the SFI facility rendered the permit application fatally flawed under what has been referred to as the "IT decision" in administrative terminology, Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984).
In the "IT decision", the Louisiana Supreme Court set forth a number of factors to be considered by DEQ when employing a cost benefit analysis in determining whether to grant or deny a permit for a proposed facility. In Blackett v. Louisiana Department of Environmental Quality, 506 So.2d 749, 754 (La.App. 1st Cir.1987), this court summarized those considerations into five categories:
First, have the potential and real adverse environmental effects of the proposed facility been avoided to the maximum extent possible? Second, does a cost benefit analysis of the environmental impact costs balanced against the social and economic benefits of the proposed facility demonstrate that the latter outweighs the former? Third, are there alternative projects which would offer more protection to the environment than the proposed facility without unduly curtailing non-environmental benefits? Fourth, are there alternative sites which would offer more protection to the environment than the proposed facility site without unduly curtailing non-environmental benefits? Fifth, are there mitigating measures which would offer more protection to the environment than the facility as proposed without unduly curtailing non-environmental benefits?
In response to the "IT decision", DEQ formulated a list of questions which permit applicants must address in connection with a permit application. The record reflects that SFI submitted its "IT Responses" with its permit application to DEQ. In reference to the question "[a]re there alternative sites which would offer more protection to the environment than the proposed facility site without unduly curtailing non-environmental benefits", SFI responded:
In evaluating sites most suitable for the business concept envisioned by SFI, a number of controlling factors were addressed. The primary factor was the centrality of location with regard to potential sourcing of material for delivery to the site. The industrial corridor between New Orleans and Baton Rouge is considered as one of the larger generating regions, principally due to the concentration of petroleum and petro-chemical industries. Nevertheless, it is also recognized that the Lake Charles area and other areas in northern and central Louisiana are potential shipment points of material to an SFI preparation facility. It was also felt that the off-shore oil industry could have need for the capacities offered by SFI. In this light, consideration was given to potential locations south of New Orleans on the Mississippi River only to conclude that any advantage offered by proximity to the off-shore industry was detrimentally offset by additional transport from the more dominant generating regions.
The remainder of SFI's response to this "IT" question focuses on why SFI considered the St. Gabriel site to be appropriate for its operations.
During the adjudicatory hearing, the questions of why SFI chose the St. Gabriel site, *38 and whether SFI ever considered any alternative sites were explored. At the time the SFI permit application was filed, SFI did not own the land upon where it proposed to build its facility. Instead, it had an option to purchase the property from Nordix, Inc. Nordix, Inc. and SFI are both owned by the same individuals, Mr. Lloyd Hansen and Mr. Jim Ethridge. The record reflects that on May 28, 1993, SFI purchased the property from Nordix, Inc.
Mr. Hansen, a 50% owner of SFI, explained that the site was chosen because of its proximity to the chemical industries. He stated that other sites had been considered, but not seriously. He attested that other river locations were given consideration, but he could not state the location of the alternative sites, only that they were "south of New Orleans."
SFI's other 50% owner, Mr. Jim Ethridge, attested that Mr. Mark Tesson, who prepared the permit application, was one of the most knowledgeable individuals on the project with reference to the site layout and the "IT" responses. Mr. Tesson, the primary permit writer, stated that he did not know of any other sites that were considered by SFI. He stated that it was possible that SFI's owners did consider alternative sites, but he had no knowledge of any alternative sites having been considered in connection with the application.
In his written reasons for the permit denial, the Secretary of DEQ stated that the IT decision required a consideration of alternative sites that would offer more protection to the environment than the proposed facility without unduly curtailing non-environmental benefits. SFI submits that the Secretary misapplied the law by focusing exclusively on the site selection criteria in denying the permit, and using the failure to address a single IT question as an absolute bar to the issuance of its permit.
We reject the argument that the decision is legally flawed. The IT decision requires DEQ to conduct a balancing process in which environmental costs and benefits must be given careful consideration. DEQ has a constitutional mandate to determine that the adverse environmental impacts have been minimized or avoided as much as possible consistently with the public welfare. Matter of American Waste and Pollution Control Company, 93-3163 p. 18-20, 642 So.2d at 1265-66. A proper evaluation of alternative sites to determine the comparative environmental impact of a proposed facility is part of the cost benefit analysis which DEQ is required to undertake before ruling on a permit. See Matter of American Waste & Pollution Control, 633 So.2d 188, 196-197 (La.App. 1st Cir.1993), aff'd, 93-3163 (La. 9/15/94), 642 So.2d 1258 (wherein this court vacated a DEQ order granting a permit to operate a solid waste landfill where DEQ and the permit applicant failed to properly evaluate alternative sites).
SFI's remaining arguments attack the substance of the DEQ determination from a factual standpoint.[5] It complains that the decision is manifestly erroneous, arbitrary and capricious, and is not rationally connected to the facts found by the Secretary because it is contradicted by the evidence on the siting issue and by the Secretary's own factual findings. This challenge is predicated on a statement made by DEQ in a "Responsiveness Summary" following a public comment period, wherein DEQ stated that it was accepting SFI's statement that alternative sites were considered. SFI submits that this statement is a finding of fact by DEQ, which is contradicted by the final order in which DEQ found that alternative sites were not considered. The substantive challenge is also based on the Secretary's reasons for the permit denial, wherein he stated that there was no data to support the claim that the health of adjacent communities would be adversely affected if the facility were allowed. SFI posits that before it would even have to consider alternative sites, the Secretary would have to find that there would be adverse environmental effects by the proposed *39 facility, and thus, the ultimate decision is not rational.
On review, a court should not reverse a substantive decision of DEQ on the merits unless it can be shown that the actual balance of costs and benefits that was struck was arbitrary or clearly gave insufficient weight to environmental protection. Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d at 1159. In light of this standard of review, a court encounters significant limitations. Matter of Recovery I, Inc., 93-0441 (La.App. 1st Cir. 4/8/94), 635 So.2d 690, 699, writ denied, 94-1232 (La. 7/1/94), 639 So.2d 1169. If the evidence as reasonably interpreted supports the determination of the administrative agency, its orders will be accorded great weight and will not be reversed or modified in the absence of a clear showing that the administrative action is arbitrary and capricious. The test for determining whether the action is arbitrary and capricious is "whether the action taken is reasonable under the circumstances." Stated differently, the question is whether the action taken was "without reason." Id. at 699-700.
Our review of the record reveals that SFI did not give due consideration to alternative sites for its project from an environmental standpoint, but selected the site for its facility out of business and economic concerns. DEQ's decision to deny the permit for the failure to consider alternative sites is a legitimate one from a legal standpoint, and is clearly supported by the record. Therefore, we conclude that the action taken by DEQ is reasonable under all of the circumstances. Accordingly, we affirm DEQ's decision denying SFI the requested permit. All costs of this appeal are assessed to appellant, Supplemental Fuels, Inc.
AFFIRMED.
KUHN, J., dissents and assigns reasons.
KUHN, Judge, dissenting,
This court lacks subject matter jurisdiction to decide this appeal at this time. The majority opinion ignores the clear language of La.R.S. 30:2024 A, which provides that if a respondent[1] timely files a request for hearing with the secretary and the secretary does not grant the hearing within thirty days, the respondent shall, within thirty days thereafter, be entitled to file an application for a de novo review of the Secretary's action in the Nineteenth Judicial District Court. In the instant case, SFI timely filed a request for hearing after the Secretary denied the permit. The request for hearing was not granted during the thirty day time-period provided by the statute, but was specifically denied by the Secretary within that time period. SFI then timely filed the application for de novo review in the Nineteenth Judicial District Court during the thirty-day time period provided for by the statute.
The parties do not dispute that SFI has complied with the provisions of R.S. 30:2024 A with respect to filing the request for a hearing and applying for a de novo review within the applicable time period. However, the majority addresses the issue of whether the La.Admin.Code tit. 33, § 709A adjudicatory hearing held by DEQ precludes the subsequent availability of the "de novo" review under R.S. 30:2024 A and concludes that the legislature intended to provide for "de novo" review only where 1) DEQ has discretion to grant or deny a permit applicant an adjudicatory hearing and 2) DEQ denies the applicant's request for a hearing.
R.S. 30:2024 A does not make the right to de novo review contingent upon the absence of an adjudicatory hearing at any stage of the DEQ proceedings. The statute specifically addresses the procedure to be followed after the secretary issues a permit action. As written, the statute does not provide for consideration of whether an adjudicatory *40 hearing has been held by DEQ prior to the issuance of the permit action.
La.C.C. art. 9 provides:
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
The application of the clear language of the statute to the facts before us does not lead to absurd consequences. The legislature may have decided to provide for the entitlement to de novo review for these type of permit applications simply to ensure the opportunity for the development of a full record for appellate review, even though in some instances it would not be necessary to introduce additional evidence before the trial court. An absurd result is not produced if a hearing is first held before the DEQ and then a second hearing is held before the trial court. The term "de novo" itself contemplates that the review is to take place "a second time." Black's Law Dictionary 435 (6th ed. 1990). In this instance, the majority denies appellant its statutory right to introduce additional evidence before the trial court.
Since the hearing requirement imposed by § 709(A) has been in effect since 1984, I presume that when the legislature enacted R.S. 30:2024, it was aware that a hearing would be held by DEQ prior to any action by the Secretary involving the issuance of permit applications for commercial hazardous waste treatment facilities. If the legislature wanted to provide for an exception from the entitlement to de novo review pursuant to R.S. 30:2024 A(3) in matters involving these type of permit applications, it could have easily done so.
I disagree with the majority's conclusion that R.S. 30:2024 C provides a jurisdictional basis for this court to review this appeal. Based on the facts of this case, there is no "final decision or order" to be reviewed by this court.
In Matter of American Waste, 93-3163 (La. 9/15/94), 642 So.2d 1258, the court addressed the issue of whether the action of the Secretary pro tempore in granting a standard permit for the construction, installation and operation of a solid waste facility was a "final decision or order" within the meaning of R.S. 30:2024 C. In deciding this issue, the court directed that it was unnecessary to look to the Administrative Procedure Act ("APA"), or the supreme court's interpretations of the requirements of the APA since R.S. 30:2024 directs when a decision or order becomes final. Applying the statute to the facts before it, the court found that the Secretary pro tempore's action of granting the permit was "final" based on the following reasoning:
Subsection A of R.S. 30:2024 provided at the time the permit was granted that, as between the permittee (American Waste) and DEQ, a permit action shall be final when issued (unless a later date is specified) unless American Waste files a request for a hearing with the DEQ Secretary within twenty days. Since no hearing was requested by American Waste, the agency action is final.
93-3163, pp. 12-13, 642 So.2d at 1264.
The Matter of American Waste court did not specifically address the issue of when a decision or order becomes final in the event that the respondent or permittee does request a hearing within the time period set forth in Subsection A. However, the opinion suggests that, in the event that a hearing is requested by respondent, the agency action does not become final until the review process set forth by R.S. 30:2024 A is completed. In other words, the R.S. 30:2024 A review defers the finality of the permit decision until the Subsection A review is concluded, pursuant to either an adjudicatory hearing granted by the Secretary under Subsection A(2), or a de novo review before the Nineteenth Judicial District Court under Subsection A(3).
The majority's interpretation of Subsection C abrogates respondent's right to a de novo review by the district court conferred by Subsection A. Subsections A and C of R.S. 30:2024 must be interpreted in reference to each other. In construing a statute, we are bound to consider all parts together, giving effect to all parts, if possible, and not construing as surplusage any sentence, *41 clause or word, if a construction can be legitimately found which will give meaning to and preserve all the words of the statute. La. C.C. art. 13; Perkins v. State Board of Elementary and Secondary Education, 562 So.2d 930 (La.App. 1st Cir.), writ denied, 565 So.2d 448 (La.1990).
When Subsections A and C of R.S. 30:2024 are read together, it is easy to conclude that the legislature intended for Subsection A to control with respect to jurisdiction in matters involving enforcement or permit actions. To the extent that there is any conflict between Subsections A and C, Subsection A should control since it is the provision of the statute that is more specifically directed to the matter at issue. See Matter of American Waste and Pollution Control Co., 93-3163, p. 15, 642 So.2d at 1264.
In the present suit, since SFI did file a timely request for a hearing, the Secretary's action denying the permit application is not yet final because SFI has timely invoked the right to review under R.S. 30:2024 A. Thus, R.S. 30:2024 C does not provide a jurisdictional basis for review by this court. Consequently, I believe that this appeal should be dismissed because this court lacks jurisdiction to review it.
I respectfully dissent.
NOTES
[1] The two appeals were not consolidated. Our decision in Docket Number CA 94-1878 will also be handed down this day.
[2] In 1993, by La. Acts No. 567, the legislature amended La.R.S. 30:2024 A to designate the provisions of Subsection A into subparagraphs and increased the time limits for a respondent or permittee to request a hearing under § 2024 from twenty to thirty days. The parties do not dispute that the application for de novo review filed pursuant to R.S. 30:2024 A(3) was timely filed.
[3] Interestingly, when the intervenors attempted to have DEQ hold a second adjudicatory hearing after the conclusion of the § 709 hearing, it was SFI who vehemently opposed those efforts, arguing that since a full adjudicatory hearing had already been held and concluded, the intervenors were attempting to "re-open" the adjudicatory hearing, which was not authorized by law.
[4] SFI filed a motion to supplement the record in the instant appeal to include a memorandum from an Assistant Secretary of DEQ and DEQ's responses to additional public comments, both of which were initially inadvertently omitted from the appellate record prepared by DEQ. Supplemental Fuels, Inc., 94-1596 (La.App. 1st Cir. 11/4/94). These documents appear in a volume later filed to correct the record on appeal; therefore, the motion to supplement is moot.
[5] We note that SFI also argues that the decision should be reversed because it violates the Commerce Clause of the United States Constitution and because the Secretary of DEQ failed to consider the Assistant Secretary's recommendations in making his permit determination. These challenges are clearly lacking in merit.
[1] The "respondent" addressed in La.R.S. 30:2024 A is the defendant in an enforcement action or the applicant in a permit action. Matter of Carline Tank Services, Inc., 626 So.2d 358, 361 (La.App. 1st Cir.1993). The term "respondent" in this article has been determined by this court to include "one to whom a permit was issued or refused." Id. at 361, ftn. 4; Blackett v. Dept. of Environmental Quality, 506 So.2d 749, 753 (La.App. 1st Cir.1987).